STATE OF FLORIDA v. FLORIDA STATE IMPROVEMENT COMMISSION, an Agency of the State of Florida.

34 So. (2nd) 443 January Term, 1948
March 5, 1948 En Banc

*L. Grady Burton,* for appellant.

*B. A. Meginnis, John U. Lloyd, M. R. McDonald* and *W. R. Slaughter,* for appellee.

*Giles J. Patterson,* for amicus curiae.

SEBRING, J.:

This is an appeal from a final decree validating certain Florida State Improvement Commission revenue bonds and approving the plan by which the bonds are to be liquidated. The bonds in question are to be issued to finance the construction of a road connecting State highways, to be built in Highlands County at the request of the Board of County Commissioners of the County. They are dated October 1, 1947, bear interest "at the lowest rate obtainable when the same are sold at par or better," and are to be completely paid off and discharged by October 1, 1954.

As a means of procuring revenues to pay the principal and interest on the bonds, and to defray the costs incurred in con-

nection with their issuance, the State Improvement Commission has entered into an agreement with the State Road Department whereby the latter has agreed to lease and purchase the road for a sum of money sufficient to meet all bond requirements, the money to be paid from surplus gas taxes accruing to the credit of Highlands County under section 16, Article IX of the Constitution.

All of these negotiations have been conducted pursuant to chapter 23758, Laws of Florida, enacted by the 1947 session of the legislature. This statute empowers the Florida State Improvement Commission, upon the application of any county evidenced by resolution of its Board of County Commissioners, to acquire or to construct within the county any road or bridge connecting State highways within such county, and to finance the acquisition or construction of such project through the issuance and sale of revenue certificates and bonds, in accordance with the provisions and requirements of Section 420.06 Florida Statutes 1941, as amended by Chapter 22821, Laws of Florida, 1945. It also empowers the Improvement Commission to lease or sell the road or bridge so acquired or constructed to the State Road Department, upon such terms and conditions, and for such sum of money, as will assure to the Improvement Commission sufficient revenues to pay all costs incurred in connection with the acquisition or construction of the road or bridge and as will represent the fair market value of the improvement for leasehold and purchase purposes. By the terms of the statute the State Road Department is authorized to pay the rental or purchase price of the road or bridge "from the surplus gasoline taxes which may in the future accrue to the credit of the county or counties in which the road or bridge is located, under the provisions of Section 16 of Article IX of the Constitution of Florida, or from other State Road funds."

The lease-purchase agreement entered into between the Improvement Commission and the State Road Department, pursuant to Chapter 23758, supra, contains the following pertinent provisions:

" . . . That for and in consideration of the sum of one ($1.00) Dollar this day paid by each party hereto to the

other, the receipt whereof is hereby acknowledged, and in further consideration of the mutual and dependent covenants of the parties hereto and other good and valuable considerations as hereinafter set forth, the said Lessor does by these presents lease to the said Department, its successors and assigns:

" 'That certain road in Highlands County known as State Road No. 59 from State Road No. 8 in DeSoto City to a point at or near Sunnyland School, a distance of approximately twelve (12) miles, all to be constructed by or under the direction of the Department,'—said lease to take effect from the date of the completion of the construction of said road and to extend for a period of twenty-five (25) years or until all of said bonds hereinafter described, or any refunding issues thereof, have been paid in full.

"The said Lessor further agrees that it will, at the earliest possible date, after having complied with all legal requirements, offer for sale and sell to the highest and best bidder $525,000 FLORIDA STATE IMPROVEMENT COMMISSION SERIES 3 HIGHLANDS COUNTY ROAD REVENUE BONDS, and that, immediately upon receipt of the funds from the successful purchaser and after payment of all necessary expenses in connection with the preparation, issuance and sale of the bonds, including the fee of its fiscal agent, it will turn over the remainder of all monies received to the Department, said funds to be used by said Department exclusively in the construction of said State Road No. 59 as hereinbefore described, and for the purpose of paying principal and/or interest charges on said bonds accruing prior to the date of completion of said road.

"The Department, on its part, agrees to accept said funds from the Lessor and to immediately proceed with the construction of said State Road No. 59 together with necessary bridges, in accordance with its standard state road specifications, and guarantees to complete said road as quickly as is reasonably possible. The Department further agrees that in the event any principal and/or interest of any Florida State Improvement Commission Highlands County Road Revenue Bonds shall become due and payable prior to the completion

of said road, the Department will pay such principal and/or interest out of these funds or from the proceeds of the 80% surplus gasoline tax accruing to Highlands County, to the State Board of Administration, not less than twenty (20) days prior to the dates upon which such principal and/or interest shall be come due and payable.

"The Department further declares that the necessary surveys for the construction of the road has been made by said Road Department and that the amount to be derived from the sale of the revenue bonds in the sum of $525,000 is sufficient to cover the estimated cost of the construction of said road. In the event that there is a deficiency between the amount of funds available from the revenue bonds and the amount necessary to complete the project, the State Road Department agrees that it will pay from its own funds any such deficiency and that the road will be completed in accordance with the standard plans and specifications of the Department.

"In consideration of this lease, the Department does hereby promise and agree to and with said Lessor as follows:

"The Department will pay as rentals on said lease, not less than twenty (20) days prior to the dates on which any of the principal and/or interest of Florida State Improvement Commission Highlands County Road Revenue Bonds shall become due and payable, such sum or sums of money as shall be equal and sufficient to pay the said principal and interest upon said bonds as they severally became due, so long as any of such bonds or interest thereon (or refunding issues thereof) shall be outstanding and unpaid. Such rentals agreed to be paid by the Department shall be paid by the Department from Highlands County surplus gasoline tax fund as and when such surplus gasoline tax funds accrue, pursuant to the authority of Chapter 20555, Laws of Florida, Acts of 1941, and Section 16(c) Article IX of the State Constitution. Said rentals shall be paid by the Department directly to the State Board of Administration for administration and disposition in accordance with the provisions of Chapter 21853, Laws of Florida, Acts of 1943. The Department agrees that its covenants herein to pay said rentals shall be construed as a first

charge or prior commitment or lien upon and against said surplus gasoline tax funds which shall have priority over all other or subsequent charges, claims or commitments upon or against said funds.

"In addition to the payments outlined herein-above, the Department will, upon completion of the construction of said road, pay to the State Board of Administration any funds which it may have on hand, either in the construction fund or in the 80% surplus gasoline tax funds credited to Highlands County, and it shall from time to time pay to the State Board of Administration any and all funds which it may receive from surplus gasoline tax funds to be credited to Highlands County. These payments shall be made to the State Board of Administration as soon as received, and the payments shall continue until there shall be in the hands of the State Board of Administration a sum of money equal to the total amount of the principal and interest which shall fall due in the current fiscal year plus the total amount of the principal and interest which shall fall due in the two ensuing years, and after such an amount has been paid to the State Board of Administration the Department will thereafter pay as rentals on said lease, not less than twenty (20) days prior to the dates on which any of the principal and/or interest on Florida State Improvement Commission Highlands County Road Revenue Bonds shall become due and payable, such monies required to pay such principal and/or interest, and will at the same time these payments are made pay any additional amount which may be necessary, so that there will be at all times in the hands of the State Board of Administration sufficent funds to pay current principal and interest plus a sum equal to the total bond principal and interest requirements for the two ensuing years.

—2—

"It is mutually agreed that said rentals covenanted to be paid and the other considerations agreed to be performed by the Department represent the fair rental and market value of said road.

—3—

"The Department will, solely at its sxpense out of state

road funds, at all times during the continuance of this agreement maintain said road in good repair and in sound operating condition and will make all necessary repairs, renewals, reconstruction and replacements.

—4—

"When the Department shall have performed all the covenants hereunder and shall have paid the rental herein provided for, for the full term of the lease, and all the indebtedness, including interest, represented by said $525,000 Florida State Improvement Commission Highlands County Road Revenue Bonds has been paid and satisfied, then the title and absolute ownership to all the property included in the lease shall thereupon immediately be vested in the State of Florida in fee simple; and the Lessor covenants and agrees to, and will thereupon deliver to, the Department such deeds and conveyances as may be necessary or convenient to vest full title and ownership of all said property in the State of Florida."

With respect to the security pledged by the State Improvement Commission for the payment of the bonds, each bond recites on its face:

"This bond . . . is payable and redeemable only from revenue accruing to the State Improvement Commission under and by virtue of its contract of lease-purchase with the State Road Department, together with all other bonds of the issue of which this bond is one, is secured by a first, exclusive and closed lien on the income and revenue derived from said lease-purchase agreement, all as in said Resolution provided.

"This instrument is an obligation of the Florida State Improvement Commission in its corporate and representative capacity and is secured only by such revenue as shall be pledged as security for its payment and it is not an obligation of the State of Florida, nor of any County of the State of Florida and will not and cannot be paid, redeemed, satisfied nor liquidated with tax funds of the said State of Florida nor of any County of the State of Florida, except that the foregoing limitations shall not apply to any tax funds or other funds paid or agreed to be paid by the State Road Depart-

ment to the Florida State Improvement Commission pursuant to authority of law as rentals, charges on purchase payments which tax funds or other funds so paid or payable have been set forth in the face of this bond."

The authorizing resolution enacted by the Improvement Commission, which, by reference, is made a part of each bond recites:

" . . . The Revenue Bonds hereby authorized shall be legal obligations of the Commission but secured only, however, by the pledge of the revenue accruing to said Commission under said lease-purchase contract with the State Road Department. They shall not be obligations of the State of Florida nor of Highlands County and will not and cannot be paid, redeemed, satisfied or liquidated with tax funds of the State or of Highlands County; nor shall the State of Florida, or Highlands County, be obligated to levy a tax or make any appropriation for the payment of said bonds except as herein provided.

"SECTION 11. The rentals or payments that will accrue to the Commission and that will be paid to it under and by virtue of its lease-purchase contract with the State Road Department shall be paid by that Department out of eighty (80%) percent surplus two-cent gasoline tax appropriated to it by Section 16, Article IX of the Constitution of Florida, for the construction of roads in Highlands County and shall be paid directly to the State Board of Administration in accordance with the provisions of Chapter 21853, Laws of Florida, 1943, said Board shall hold all monies received by it as aforesaid as a sinking fund in trust solely for the payment of principal and interest maturing on the Revenue Bonds herein authorized, for the account of the Commission in order to secure the payment of the contract obligations of the Board evidenced by said Revenue Bonds herein authorized and any bonds that may be issued by the Commission to refund the same or any part thereof. Any sums at any time in the hands of the State Board of Administration in excess of the amounts required to pay currently maturing principal and interest shall be held in trust by it solely for the benefit

of the holders of outstanding and unpaid revenue bonds of this issue but may be invested by it as authorized by law. Any investment so made shall also be held in trust and the same, or proceeds thereof, used solely for the payment of the bonds herein authorized. All deposits of said funds shall be continuously secured as required by the law of Florida and shall not be withdrawn or used for any purpose other than those herein designated."

The ultimate question upon the appeal is whether or not Chapter 23758, Laws of Florida, 1947, which authorizes the State Road Department to lease-purchase the road involved with surplus gas taxes accruing in the future for road and bridge construction in Highlands County, and which empowers the State Improvement Commission to pledge the "rentals" received to pay bonds to be issued to finance construction, is violative of sections 6 and 16 of Article IX of the Constitution. A secondary question is whether, assuming the statute to be constitutionally valid, the road which is the subject matter of the lease-purchase agreement is the type or kind of project for which surplus gas tax proceeds accruing under Section 16, Article IX of the Constitution may be validly expended by the State Road Repartment.

At the outset we think it must be recognized that though the written agreement between the State Improvement Commission and the State Road Department is, in form, a contract for the long term lease of a public highway with title to vest in the State at the end of the term, it is, in fact, a contract by the State Road Department for the construction of a state road within Highlands County to be paid for out of present and future surplus gasoline tax proceeds to be remitted by the State Board of Administration of the State Road Department for the purpose of constructing roads and bridges in Highlands County. We think, also, that even though the bonds to finance the project are to be issued as the sole obligations of the Improvement Commission "in its corporate and representative capacity and secured only by such revenues as shall be pledged as security for the payment thereof," the State Road Department has in reality agreed to pay the bonds—at least indirectly—to the extent of the fund

it will receive from surplus gas tax proceeds accruing to the benefit of Highlands County under Section 16, Article IX of the Constitution; because the "rentals" which are to be paid to the State Improvement Commission until the bond obligations are paid in full, constitute the only source of revenue pledged, or which may be pledged as security for the retirement of the bonds. Frank recognition of these facts, however, does not necessarily mean that by reason of their existence, the legislative scheme or devise for acquisition of the road must be declared null and void.

It is well-settled by previous decisions of this court that revenue bonds issued by the State Improvement Commission under authority of Chapter 22821, Laws of Florida, 1945, to finance public projects which the Commission is authorized to acquire, construct, maintain or operate, are not state bonds within the contemplation of section 6, Article IX of the Constitution, where the security for the payment of the bonds is confined exclusively to rents, tolls, or fees realized from the use of such projects, and are not derived from state tax levies or paid from state tax funds. Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677; Brash v. Tuberculosis Board, 124 Fla. 652, 167 So. 827, 169 So. 218; State v. Florida State Improvement Commission, (Fla.), 30 So. (2nd) 97. As was pointed out in State v. Caldwell, 156 Fla. 618, 23 So. (2nd) 855:

"The Act . . . provides in terms that the obligations and securities undertaken shall not under any theory bind the State of Florida and 'shall be solely and only the obligations of the Florida State Improvement Commission in its corporate and representative capacity and shall be secured only by such revenues as shall be pledged as security for the payment thereof.' . . . It would hardly be possible to express the non-liability of the State more conclusively.

" . . . The law is settled in this state that evidences of debt secured solely from rents and facilities of the Commission are not bonds that must be approved by the freeholders as required by Section 6, Article 9 of the Constitution . . . "

See also State v. Florida State Improvement Commission, (Fla.) 31 So. (2nd) 548.

We hold, therefore, that the bonds proposed to be issued in the present cases cannot be State bonds; unless it be that by the indirect method proposed for their payment, state tax money constitutionally usable only for strictly State purposes is in fact to be used to liquidate and discharge them.

That such cannot be the fact has been definitly settled, we believe, at least in principle; by the decision of this court in State v. State Board of Administration, 157 Fla. 360, 25 So. (2nd) 880. In the cited cases there was involved the financing and construction of certain toll bridges and highways by Overseas Road and Toll Bridge district in Monroe County. The original bonds issued to finance the project had provided for their payment exclusively "from the tolls and other revenues of any nature whatsoever received from the operation of the toll bridges and toll highways, *and any other property of the district.*"

The bonds were sought to be refunded under a plan whereby the toll roads and bridges were to be sold to the State Road Department. As consideration for the purchase, the Road Department agreed to pay as the purchase price "all amounts received for tolls from said toll bridges and toll highways and *all funds from the eighty per cent gasoline surplus available to Monroe County, pursuant to Section 16(c) Article IX of the Constitution.*" The bonds were refunded on this basis; the refunding bonds pledging not only the tolls and revenues to be received from the operation of the facilities, but also the "funds from the eighty per cent surplus gas tax proceeds available to Monroe County," agreed to be paid by the State Road Department as part of the purchase price in the acquisition of the toll roads and bridges.

On appeal it was held that the scheme or plan divested for paying off the refunding bonds was perfectly lawful and proper; and that no new or additional source of revenue was being pledged by the district as security for the payment of the refunding bonds, inasmuch as surplus gas tax proceeds to be credited to the account of Monroe County were usable for no purpose other than road and bridge acquisition and construction within the County and hence so closely partook of

the nature of property belonging to Monroe County as to authorize their inclusion in the bond pledge. as "other property of the district."

This holding of the Court to the effect that future surplus gas tax proceeds, accruable under Section 16 Article IX of the Constitution, could be thus pledged to service bonds payable in the future, necessarily excluded any conclusion that such gas tax proceeds were "state funds" within the purview of section 6 Article IX of the Constitution and therefore expendable only when in hand, for current expenses of state government or for bonds to repel invasion or suppress insurrection. See Advisory Opinion to Governor, 94 Fla. 967, 114 So. 850, which points out the manner in which strictly state funds must be expended.

The conclusion reached by the Court in State v. State Board of Administration, supra, is entirely consonant with the purposes for which section 16 Article IX was adopted as a part of our Constitution. Section 16, Article IX converted the statutory Board of Administration then in existence under Chapter 14486, Laws of Florida, 1929 into a constitutional body, specifically incorporated in the Constitution provisions for a two-cent gas tax levy for a period of fifty years, appropriated the proceeds of that tax to the credit of the counties for the retirement of their road and bridge obligations, and made available a continuing surplus for road construction within each of the counties. The section expressly authorizes the Board thereby created to pledge a county's share of the gasoline tax levied by it to secure payment of bonds issued. Subsection (c) mandatorily requires the Board to pay the bonds described therein as they mature, to create a fund to meet subsequent maturities in years where it is estimated receipts will not be sufficient, and to divide any balance remaining; 80 per cent of the State Road Department and 20 per cent to the County Commissioners. It orders that the 80% appropriated to the State Road Department be used solely for "the construction of state roads and bridges" and for the "lease or purchase of bridges connecting state roads." The tax is levied for a period of fifty years and the legislature is expressly prohibited from reducing the rate, or from

changing the method of distribution or the purposes for which the proceeds may be used. All of these requirements were designed to stabilize the credit of the counties, to assure a means of liquidating the road and bridge obligations of the counties, and to provide to the counties an appropriate and secure means to enable them, through the State Road Department, to extend the state system of roads and bridges within their territorial boundaries. Under this Constitutional plan the surplus gas tax proceeds which will be remitted to the State Road Department, in trust for the use of each of the counties, are fixed definite and certain—at least to the extent that the funds will be or become available for road and bridge construction or acquisition for a period of fifty years from the adoption of the amendment, cannot be withdrawn from the purpose, and cannot be transferred or shifted by the Legislature to any other state purpose.

It has been suggested that even though the surplus gas tax proceeds are held in trust for the counties, still no authority exists within the Constitution provision for anticipating future tax funds for building present projects, even though such a program might be presently beneficial. The argument is that because the Constitutional amendment is entirely silent as to the manner or method by which the State Road Department is to discharge the responsibility imposed on it by the Constitution of carrying on needed road construction within the counties with funds which are, in effect, trust funds of the counties, only two courses of action are open to the State Road Department: (1) to build only such portions of public roads as can be constructed from year to year with funds accruing to each of the counties during each fiscal year throughout the life of the amendment, or (2) to wait until such time in the future as there shall be sufficient funds on hand to build such projects in toto.

Manifestly the pursuit of the first course suggested would result in piecemeal construction of public highways—a course which can hardly be said to be economically sound; while the pursuit of the second might well result in the loss of a link in the state highway system that may be sorely needed at the present for the proper economic expansion of the county

affected. Neither course, in our view, would be productive of the results designed to be accomplished by the constitutional amendment, in extending the facilities of the State highway system.

The funds accruing from the eighty per centum surplus gas tax proceeds being fixed, definite and certain as to availability and, therefore, being, in a sense, in esse; and the same not being State tax funds within the contemplation of Section 6 Article IX of the Constitution; and Section 16, Article IX containing no express or implied provisions as to the plan or method by which they shall be expended; we think it entirely competent for the legislature to prescribe, by statute, the plan or method by which they may be utilized by the State Road Department for the benefit of the counties in procuring either present or future additions or extensions to the State Highway system.

Any statute enacted, however, if it is to be constitutional, must neither divert the eighty per cent gas tax surpluses to purpose other than a state purpose, nor to a purpose or project not particularly authorized by section 16(c) Article IX of the Constitution. It must not attempt to specify the use that shall be made of tax funds in the hands of the State Road Department, other than the eighty per cent gas tax surpluses accruing to the use of the counties. It must not obligate the taxing power of the State or any of its political subdivisions or agencies, except as to the eighty per cent surplus gas tax proceeds, or authorize the incurring of obligations except as shall be payable only and exclusively from such proceeds.

Chapter 23758, Laws of Florida, 1947 appears to comply with all these requirements; except as to that provision of the statute which attempts to authorize the State Road Department to pay to the State Improvement Commission, as rentals under the lease-purchase agreement, not only surplus gasoline taxes to the credit of the counties, but also *"other State Road Funds."* As to funds other than the eighty per cent gas tax surpluses, we are of the view that the legislature was without power to authorize the State Road Department to obligate them for this purpose.

The only other questions raised by the appellant on this appeal are with reference to whether or not, assuming the statute to be constitutionally value, the road which is the subject matter of the lease-purchase agreement is the type or kind of project for which surplus gas tax proceeds accruing under section 16 Article IX of the Constitution may be lawfully expended by the State Road Department.

It is pointed out by the appellant that while section 16(c) Article IX authorizes the expenditure of surplus gas taxes for "the *construction* or *reconstruction* of State roads and bridges within the county" it does not authorize the expenditure of such funds for the *lease or purchase* of roads, and hence that the statute authorizing the State Road Department to "rent" the road and pay the rentals with gas tax surpluses, is an invalid attempt to divert the tax surpluses to a use not contemplated by the Constitution. It is also pointed out that though the Constitution specifically directs that the gas tax surpluses are to be used only "for the construction or reconstruction of State roads and bridges within the county or for the lease or purchase of bridges connecting State highways within the County" the statute authorizing the lease-purchase agreement between the parties provides that part of the "rentals" are to be used by the Improvement Commission to pay interest on its revenue bonds; and that this is an unauthorized attempt to divert the proceeds.

We think that under the view we have taken of the real nature of the lease-purchase agreement between the parties, as being essentially a contract for the construction of a needed State highway connecting with other State highways, neither contention is tenable. Under the contract the State Road Department is to do the planning, surveying and actual construction of the highway with money raised by the sale of the bonds issued by the Improvement Commission. It is to maintain and repair the road throughout the course of the contract. The construction of the road has been found, by authorization resolution, to be necessary as an extension of the State highway system. There has also been a finding that the sums of money to be used as rentals represent the fair market value of the road for leasehold and for purchase pur-

poses. Under these conditions it cannot be said that the State Road Department is not lawfully "constructing" the road within the contemplation of the Constitution. This being the situation, it is our view that the payment of interest on the bond proceeds is merely a legal and necessary incident to that venture.

The extent to which interest may be paid on bonds issued by the Improvement Commission is fixed by Section 420.06 Forida Statutes, 1941, as amended by Chapter 22821, Laws of 1945. That statute authorizes the State Improvement Commission to borrow money and issue bonds for their repayment, but with the provision that "In no case shall any such bonds, notes or certificates mature later than thirty years from date of issue, or bear interest at a rate greater than six per cent per annum, or be sold at such price that the net interest cost to the commission shall exceed six per cent to the respective maturities thereof." It may be well to call attention to the fact that in the present case the bonds recite that they are to bear interest "at the lowest rate obtainable when the same are sold at par or better." It must be understood, therefore, that if "the lowest interest rate obtainable" on the bonds exceeds the statutory provision for interest, the bonds to that extent will be unenforceable.

From the conclusions we have reached with respect to the nature of the lease-purchase agreement, the purposes for which the eighty per cent surplus gas tax proceeds may be used, and of the power of the Legislature with respect thereto, it follows that the decree appealed from must be, and the same is hereby, affirmed.

It is so ordered.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.

ADAMS and BARNS, JJ., dissent.

TERRELL, J., concurring:

The ultimate question presented by this appeal is whether or not the revenue bonds validated by the decree appealed from may be construed as obligations of the State in violation of that part of Section 6, Article IX of the Constitution pro-

hibiting the issue of State bonds except for designated pur-poses.

The answer to this question turns on the interpretation of Chapter 23758, Acts of 1947, as applied to Section 16, Article IX of the Constitution. It is not denied that the validated bonds and the contract between the State Road Department and the State Improvement Commission were executed in compliance with Chapter 23758, Acts of 1947, the purpose of which was to enlarge the powers of these two state agencies within the purview of Section 16, Article IX, particularly with reference to the construction of state roads and bridges in the different counties. Section 16, Article IX converted the Florida State Improvement Commission into a constitutional Board and imposed the "second gas tax," a period of fifty years, for the payment of outstanding bonds or certificates of indebtedness issued by the counties. Another provision of the amendment required that any remaining balance of the proceeds of said tax be allocated, eighty per cent to the State Road Department and twenty per cent to the counties. Chapter 23758 is concerned with the use of the eighty per cent allocated to the State Road Department for road and bridge purposes in the Counties.

The test of whether a bond is a State obligation is whether or not the taxing power of the State may be called on to service and discharge it. Chapter 23758, Acts of 1947 does not purport to create an obligation against the State. It negatives any such charge, in that it puts the world on notice that neither the taxing power of the county nor the state can be called on to pay the bonds. Section 2 requires that the following provision be a part of each bond:

"This instrument is an obligation of the Florida State Improvement Commission in its corporate and representative capacity and is secured only by such revenue as shall be pledged as security for its payment and is not an obligation of the State of Florida, nor of any County of the State of Florida and will not and can not be paid, redeemed, satisfied nor liquidated with tax funds of the said State of Florida nor of any County of the State of Florida, except that the foregoing limitations shall not apply to any tax funds or other

funds paid or agreed to be paid by the State Road Department to the Florida State Improvement Commission pursuant to authority of law as rentals, charges or purchase payments which tax funds or other funds so paid or payable have been set forth in the face of this certificate."

Since under the lease contract between the State Road Department and the State Improvement Commission the bonds in question are discharged with funds allocated to the Road Department under Section 16, Article IX of the Constitution, it seems to me that there is no theory under which they could be said to be State bonds or create a state obligation within the meaning of Section 6, Article IX of the Constitution. Section 16 of Article IX was added to the Constitution in 1942, and must have contemplated the prohibition in Section 6, Article IX. Section 6, Article IX does not prohibit a transaction like that involved here, Chapter 23758 authorizes it, and similar contracts between state agencies were approved by this Court, absent the approval of the freeholders in State v. State Improvement Commission, 158 Fla. 743, 30 So. (2nd) 97. See also State v. State Board of Administration, 157 Fla. 360, 25 So. (2nd) 880.

The contract here is further immunized from the charge of creating an obligation against the State in that the funds pledged the State Road Department to support it are limited to those allocated to it by Section 16, Article IX, for the construction of roads in Highlands County. If these funds should be insufficent to satisfy the bonds, there is no direct or implied power by which the bondholders can fall back on the State or County to protect them from other tax sources.

Some aspects of this case place it in a different category from those last cited, but given this interpretation, I find nothing in Chapter 23758 or the contract made under it, that creates an obligation against the State. I think the primary purpose of Chapter 23758 was to provide ways and means to deal with certain of the funds and conditions created by the adoption of Section 16, Article IX of the Constitution and that no approving vote of the freeholders as required by Section 6, Article IX was essential to the validity of bonds issued thereunder. I think the contract between the Florida State

Improvement Commission and the State Road Department was made within the terms of the Act, that the lease contract was binding on the State Road Department and may be enforced by the bondholders only as to funds received by it under Section 16, Article IX of the Constitution, or such as may be contemplated by Chapter 23758 which negatives any purpose to hold the State liable.

I have given careful consideration to the dissenting opinions of Mr. Justice ADAMS and Mr. Justice BARNS but I am convinced that on the theory here stated the validity of Chapter 23758 may be upheld and the validating decree affirmed. For these reasons I concur in the opinion and judgment of Mr. Justice SEBRING.

ADAMS, J., dissenting:

The writer is of the view that Chapter 23758, Acts of 1947, is unconstitutional; that these are state bonds and should not be validated by reason of Section 6, Article IX, Florida Constitution. The bonds are issued by a State agency; they are payable from excise taxes levied by the people of Florida when Section 16, Article IX was adopted in 1942. It is immaterial whether the taxes were levied and by what authority, that is—by the legislature, the people or the agency of either. When this type of public financing was begun the validity of the bond hinged upon whether public funds, not rents, etc., were pledged. See Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677, and similar cases. In later cases dealing with the Board of Administration we were not treating questions involving taxes. In State v. Escambia County, Florida, 153 Fla. 282, 14 So. (2nd) 576, we were dealing with county bonds wherein the holder was limited in the relief which he might demand and that had no reference to coercing state fnuds.

Here the test is whether the holder of these bonds may coerce the state's taxing power. It is patent from this record and has been stated from the bar of the court that the holders of these bonds may coerce the channeling of the monies herein pledged until these are finally paid in satisfaction of these obligations. The holder of these negotiable bonds can proclaim to the world that he holds an obligation which may be enforced in the courts of the land against a state wide excise

tax. The character of the tax, i. e., ad valorum or excise tax, would naturally be immaterial.

Did the people, by adopting the 1942 amendment, intend to alter the limitation against state bonds in Section 6, Article IX? The intent to do so has never been manifest. If these bonds are to be validated because the tax has been levied then the prohibition in the Constitution could be circumvented, when the legislature meets, by levying an excise tax and providing for the issuance of bonds against the levy and thereby obtaining immediate cash. In this fashion there would be no end to the abuse which the Constitution sought to prevent. In other words a tax may be levied by the people, as in this amendment, or it may be levied by the legislature. In either event its nature is the same insofar as we may anticipate future revenue. The purpose of the limitation is to safeguard the future welfare of the state. See Vol. XX, Virginia Law Review, page 701. It may be said in favor of the majority view that there is a limitation to the extent of the tax levied in the Constitution. It is easy to imagine, however, that all of this may be exhausted and expended in advance—resulting in still another source of revenue being lost to future needs.

It follows that this writer is of the opinion that the statute is bad in toto. If not completely bad, it surely is bad in that part which authorizes the Board to pledge *other state funds*.

BARNS, J., dissenting:

It appears to me that the proposed bonds are either State bonds or county bonds and cannot be validated. Our Constitution, in section 6, Article IX, in respect to State bonds, provides:

"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection."

And in respect to County bonds that:

"The Counties . . . of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties . . . shall participate, to be held in the

manner to be prescribed by law; but the provisions of this Act shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such Counties."

It is proposed that the bonds be executed by the State Improvement Commission and that the bonds be secured and paid from the proceeds of the "Second Gas Tax" from the 80% portion appropriated to the State Road Department, for use in relation to "State roads."

If the bonds are to be State bonds they cannot be validated, because to do so would be violative of the constitutional provision against State bonds. If the bonds be County bonds they must be approved by an election, as provided by Section 6 of Article IX, supra. They have not been approved as specified.

Bonds payable from the proceeds of a sales tax on gasoline cannot be distinguished from bonds payable from an ad valorem tax on real property. The source of revenue is from taxation in both instances. If they are bonds payable from taxation they come within the scope of the provisions of section 6 of Article IX, supra. These proposed bonds cannot be decreed to be valid because to issue them would be violative of said section, whether they be State bonds or County bonds, and they partake of one class or the other or of both classes of such bonds.

In a limited way, the 80% funds were treated as "county funds" in the Overseas Highway case, 157 Fla. 360, 25 So. (2nd) 880, and the Hester case, 158 Fla. 567, 30 So. (2nd) 356.

The people, by the adoption of Section 16 of Article IX levied this two (2c) cents "Second Gas Tax" and appropriated the proceeds thereof and, by Section 16(d) of said Article, among other things, specified that:

"The Legislature shall . . . not enact any law having the effect of withdrawing the proceeds of said two (2c) cents of said taxes from the operation of this amendment."

The status of the two (2c) cents "Second Gas Tax" levied by the Constitution and appropriated by the Constitution was

somewhat determined by State ex rel. Hester v. State Board of Administration, 30 So. (2nd) 356.

The appropriation of the proceeds of the "Second Gas Tax" involved here is controlled by the words of Article IX, section 16 (c), as follows:

" . . . and third, any remaining balance out of the proceeds of said two (2c) cents of said taxes shall monthly during the year be remitted by said Board as follows: Eighty (80%) per cent of the State Road Department for the construction or reconstruction of State roads and bridges within the county, or for the lease or purchase of bridges connecting State highways within the County, and twenty (20%) per cent to the Board of County Commissioners of such county for use on roads and bridges therein."

It is fundamental that no act of the Legislature can impair the operation of the Gas Tax Amendment according to its tenor and effect. Chapter 23758 and the proceedings now before us involve only the "80%" fund payable to the State Road Department and not the "20%" payable to the county. The words of the Amendment are that "any remaining balance . . . shall monthly during the year be remitted . . . as follows: Eighty (80%) per cent of (to) the State Road Department" for the stated uses within the County "and twenty (20%) per cent to the Board of County Commissioners" for the stated uses of the county.

This "Second Gas Tax" was created for the purpose of relieving the counties of the burden of their bonded debt. Bonds had issued during prosperous times and there was a general default among the counties during the depression of the '30s. Both the bondholder and taxpayer needed help and it was this that prompted the adoption of Section 16, supra. It is now proposed that bonds be issued by the State Improvement Commission and the proceeds of this "Second Gas Tax" be pledged to pay such bonds. True, neither the County nor the State Road Department is to issue the bonds, but the tax money is pledged to pay such bonds.

The tenor and effect of the operations under Chapter 23758 would be to permit the securing of bonds by the pledge of

future tax revenues for present expenditures, which, if not violative of section 16 of Article IX, is violative of section 6 of Article IX, supra.

It seems clear that the intent of the Gax Tax Amendment was that the money would, when received, be available for use for the functions of the State Road Department as to the 80% and to the County Commissioners as to the 20%, and such uses cannot be unreasonably impaired.

The 80% of the surplus to each of the counties was appropriated to the State Road Department for use within the several counties but the State Road Department may not be bound by the proceedings now before this Court, inasmuch as the State Road Department is not a party.

The constitutional provisions for the use of this surplus gas tax should be liberally construed, but the 80% has been appropriated for specified uses by the State Road Department, which includes construction and reconstruction of "State roads" of the county.

Since 1923 a "State road," for certain purposes, has been legislatively defined:

"The term 'state road' used in this chapter shall be construed to mean any road or part of road which has been or may be established, declared and designated by the legislature as a state road, and of which the location of the line and right of way has been surveyed and fixed upon by the department or its duly authorized engineers and representatives. . . . "—Sec. 341.28, F.S. 1941, F.S.A.

We are not now required to determine whether the road to which the funds may be applied must be a road within this definition.

The Overseas Highway case (State v. State Board of Administration, 157 Fla. 360, 25 So. (2nd) 880) is not controlling as a precedent for the question now before us inasmuch as that case involved the use of the 80% funds for the lease and purchase of a toll bridge, and Section 16 of Article IX expressly authorizes the use of the 80% funds by the Road Department:

" . . . for the lease or purchase of bridges connecting state highways within the county,"—which serves to remove any doubts as to the validity of the proceedings then under consideration.

The instruments sought to be judicially determined to be valid have all of the essential characteristics and attributes of bonds and the faith and credit of the state or county are pledged to their payment from the 80% fund of the "Second Gas Tax" and to issue them is violative of Section 6 of Article IX of the Constitution, inasmuch as some are of the class of bonds within the scope of said Section 6.