75 So.2d 1 (1954)
STATE of Florida, H.C. Williamson et al., Appellants,
v.
FLORIDA STATE IMPROVEMENT Commission, an Agency of the State of Florida, Appellee.
Supreme Court of Florida. En Banc.
October 5, 1954.
Rehearing Denied November 1, 1954.
*2 Thacker & Thacker, Kissimmee, Thad H. Carlton, Fort Pierce, and William D. Hopkins, Tallahassee, for appellants.
J. Turner Butler, Jacksonville, and Ford L. Thompson, Tallahassee, for appellee.
MATHEWS, Justice.
The Circuit Court of Leon County made and entered an order validating an issue of bonds proposed to be issued by the Florida State Improvement Commission in the sum of $2,200,000 designated Martin County Bridge Revenue Bonds, Series 1.
There was attached to and made a part of the validation proceedings in the Circuit Court Exhibit No. 2. Briefly, this Exhibit No. 2 covered a conveyance from the Jensen Road and Bridge District to the Florida State Improvement Commission of the existing wooden Jensen Bridge. It also contained an agreement by the State Road Department, the Florida State Improvement Commission and the Jensen Road and Bridge District as to the maintenance of the old bridge pending the second stage of construction from funds of the District other than tolls, the authority of the State Road Department to charge tolls on the existing Jensen Bridge during the first stage of construction and to use the same in the payment of bonds, and other provisions.
The Jensen Road and Bridge District was originally created by Chapter 8828, Laws of Florida 1921, as a special tax district, and was, when originally created, wholly within St. Lucie County, but since then Martin County was created and the boundaries of the district were located partly in St. Lucie and mainly in Martin County.
The district was authorized to construct a bridge over Indian River, in said district, which at that time was located wholly within St. Lucie County near the Village of Jensen. The district was authorized under the terms of Chapter 8828, Sp.Laws of Florida 1921, to levy taxes upon real and personal property of the district for the maintenance of the district and the payment of the indebtedness thereof. Chapters 8828, *3 Sp.Laws of Florida 1921, and Chapter 11120, Sp.Laws of Florida 1925, not only authorized taxes but also authorized tolls. Chapter 12942, Sp.Acts of 1927, eliminated tolls but under Chapter 19918, Sp.Laws of Florida 1939, and Chapter 20818, Laws of Florida 1941, tolls were again authorized.
The financing of such a utility as a bridge may be accomplished by tolls or by ad valorem taxes or a combination of both or by other means. After the 1931 Session of the Legislature counties and districts received certain benefits from gasoline taxes for the purpose of paying the principal and interest on bonds theretofore issued by such counties and districts for roads and bridges under the theory that the construction of such roads and bridges had, in addition to serving a county purpose or a district purpose, served a state purpose also. See Carlton v. Mathews, 103 Fla. 301, 137 So. 815, and Amos v. Mathews, 99 Fla. 1, 65, 115, 126 So. 308, 331, 347. In addition to these benefits the counties and districts received as a direct credit so-called surplus gas tax money and such surplus gas tax money has been used by the State Road Department in the counties and districts of the state for the purpose of financing or building roads and bridges.
Ad valorem taxes for the purpose of maintenance of the old wooden Jensen Bridge were specifically authorized by the two acts of the Legislature of 1921 and 1925 above mentioned.
The record shows that the old wooden Jensen Bridge has been very expensive to maintain and is now in a dilapidated condition and will be still more expensive in the future. It is only 18 feet wide and in its present condition does not adequately serve the local needs and a state purpose as a part of the state highway system.
Most of the questions presented to the lower court and on this appeal have been settled by a long line of decisions validating previous issues of the Florida State Improvement Commission. See State v. Florida State Improvement Commission, 160 Fla. 230, 34 So.2d 443; State v. Florida State Improvement Commission, Fla., 47 So.2d 601; State v. Florida State Improvement Commission, Fla., 52 So.2d 277; State v. Florida State Improvement Commission, Fla., 71 So.2d 146; and State v. Florida State Improvement Commission, Fla., 72 So.2d 28.
The general plan for the contemplated improvements was submitted to the 1951 Session of the Legislature, which by Chapter 27705 authorized each step in the plan which was not clearly authorized by law in acts specially applicable to the Jensen Road and Bridge District, which had the management of the Jensen Bridge, or in general acts relating to the State Road Department or the Florida State Improvement Commission. These agencies are authorized to make contributions to each other and to cooperate in other respects for the common purpose of bringing the project into existence.
In the planning and construction of roads and bridges discretion must be placed somewhere. The needs of communities, counties and the state may be considered by these agencies in which discretion is vested. It is well settled in this state that the authority of the Legislature over roads and bridges is plenary unless restricted or forbidden by some particular provision of the Constitution of the United States or of the State of Florida. The authority of the administrative agencies to whom is entrusted these governmental functions is limited only by the lawful exercise of their discretion. Within their respective areas of authority these public agencies exercise their discretion to devise plans and select sites to best serve the public need. When the plans adopted by such agencies do not exceed their lawful authority they should be upheld because the Court will not substitute its judgment for that of administrative agencies.
In order for the state to participate to the extent shown by the record in this case it was necessary that proper action be taken to make the contemplated project a part of the state highway system. That action was properly taken.
*4 The establishment, continuance and location of roads and bridges is vested in the discretion of administrative agencies. The sites or location of public improvements have always been questions over which men differed. Experience has demonstrated that squabbles and disputes over locations and sites of public improvements always come into being at the very contemplation of a major public improvement. It is true with reference to court houses, schools, playgrounds, parks, and particularly, with reference to roads and bridges. It seems to be a part of human nature for property owners, and particularly those owning commercial establishments, such as, motels, fishing camps, gasoline stations and amusement centers to feel that the location or site of a major road or bridge development is all right if it goes in front of their door. Everyone would like for his particular property to be benefited by reason of the location or site of the improvement. The primary purpose of building roads and bridges is to serve the general public rather than a particular individual or a particular part of a community.
Rivers and navigable streams are a great asset to a state or a community but they can also be a great liability for the proper development of a community or the state. Typical examples are the Mississippi River, the Savannah River, the Altamaha River, the St. Johns River and the streams around Tampa and Miami. The St. Johns River was a great asset to the northeastern part of the state when transportation was mostly by water. It became a great liability to the state in that it retarded progress, growth and development of the area between the river and the Atlantic Ocean, prior to 1921, for then there was no way to cross the St. Johns River except by ferry. The people voted on the question of building one bridge at a particular location from the proceeds of a bond issue. Many good citizens opposed the bond issue because all the money was to be spent on one project and they claimed that it would not benefit their property. Fortunately, their view did not prevail. The same situation existed in Nassau County where the validation of bonds was contested because most of the proceeds were to be spent in one particular section of the County. See Hodges v. Fernandina Port Authority in Nassau County, Fla., 38 So.2d 687.
Bottlenecks exist where roads lead into a community on a navigable stream and there is no method of crossing such stream. Even though the proceeds of a bond issue may be spent in one particular locality in order to break the bottleneck, the discretion of administrative agencies in fixing the location and spending all the money from the proceeds of the bond issue on one project should not be held to have been abused because other sections of the community or county feel the need of roads.
Whether bonds are to be paid from ad valorem taxes or from tolls or from surplus gas tax monies does not affect the status of the improvement as being a governmental function. The method of paying the bonds is simply a financial problem and if the bonds are to be paid by direct ad valorem taxes, then the question must be submitted to the freeholders of the county or district affected. All public improvements must be paid for by some method and a public improvement established and constructed in the performance of a governmental function may be accomplished as well by tolls as it could be by direct ad valorem taxes.
The Circuit Court in its final decree validating the bonds in question discussed in detail the various contentions of the parties and incorporated in the decree findings on objections raised to the validation. After a detailed discussion of the questions, the Chancellor stated:
"Thirtieth: That this Court has found that all requirements of the Constitution and Laws of the State of Florida pertaining to the enabling act and proceedings in the above entitled matter have been strictly followed:
"Now, Therefore, It Is Ordered, Adjudged And Decreed that the issuance of Martin County Bridge Revenue bonds, Series One, of Florida State Improvement *5 Commission, dated August 1, 1953, $1,000 each, bearing interest at not exceeding the statutory rate of six per centum (6%) per annum, in the aggregate principal amount of $2,200,000, maturing serially on August 1 in the years 1959 to 1983, inclusive, all of said bonds being payable at The Hanover Bank, New York City, New York, callable as provided in said resolution, is for a proper, legal, corporate purpose and is fully authorized by law, and that said Martin County Bridge Revenue Bonds, Series One, and each of them, to be issued as aforesaid and all proceedings incident thereto are hereby validated and confirmed."
The levy of an ad valorem tax to pay bonds is entirely different from the authority to levy an ad valorem tax for the purpose of repair and maintenance of the Jensen Bridge. The State Attorneys for the Circuits involved as well as the intervenors who intervened within the time required contended that the District had no authority to levy a tax for maintenance and repairs of the old wooden bridge after the District had divested itself of title to the bridge by the agreement entered into with the Florida State Improvement Commission and the State Road Department. The agreement in question provided that the Jensen Bridge would be maintained by the State Road Department so long as funds necessary for such maintenance are supplied by the Jensen Road and Bridge District from District funds until the wooden bridge is replaced or its use for traffic is discontinued. The agreement further provided that if funds for its maintenance should not be supplied that the State Road Department was authorized to close the wooden bridge for traffic, either vehicular or otherwise. This was an optional agreement and the District could provide funds for maintenance or not as the District saw fit. Even though the District, pursuant to lawful authority, had parted with the title to the bridge, it still had the right to use the same so long as it would supply the funds necessary for its maintenance and repair and until the new structures could be completed. In disposing of this question the Chancellor said:
"Sixteenth: That said District has the power and is authorized under the Constitution of Florida to agree to pay the cost of maintenance and repair of said existing Jensen Bridge notwithstanding that it has conveyed its title to said existing Jensen Bridge to the Commission in fee simple, and the use of District funds, or the levy of taxes on taxable real and personal property in said District for said purpose is, in all respects, authorized, legal and valid and constitutes a valid and legal corporate purpose of said District."
The use of the said wooden structure as provided for was sufficient consideration for the levying of an ad valorem tax to pay for maintenance and repair in the discretion of the trustees of the District.
H.C. Williamson, P.L. Hinson and George C. Westervelt attempted to intervene in this cause after the time fixed for interested persons to intervene. The Court refused to permit them to intervene but did allow them to file a brief amicus curiae. They have attempted to appear in this appeal as if they were parties to the cause and have filed assignments of error and briefs. They claimed that there was an abuse of discretion on the part of the trial Judge in denying them the right to intervene.
This entire question of intervention is covered by Chapter 75, and particularly F.S. Section 75.05, F.S.A. Suit was filed on the 25th day of March, 1953, and rule nisi was issued returnable January 18, 1954. The law with reference to such rule nisi was strictly complied with in all respects. On the return day, to-wit, January 18, 1954, the State Attorneys in Leon County and for Martin and St. Lucie Counties filed motions to dismiss. By order of the Circuit Court all objections were postponed until Friday, January 29, 1954, on which date a hearing was had. On the 11th day of February, *6 1954, after testimony had been taken, and after the return day of the rule nisi, H.C. Williamson, and others, filed their petition to intervene to which was attached a proposed answer. By F.S. Section 75.07, F.S.A., it is provided that any interested person may become a party to the proceeding by pleading to the petition on or before the time set for hearing, as provided for in F.S. Section 75.05, F.S.A., or thereafter by intervention upon leave of the Court.
On February 19, 1954, the Court made an order denying the petition for intervention by Williamson, and others, and allowed them ten days within which to file a brief as amicus curiae on constitutional questions involved in the proceeding. Pursuant to such order they filed a brief.
Williamson, and others, never became parties to the proceeding and are not proper parties on the appeal. The Circuit Judge did not abuse his discretion in denying to Williamson, and others, the right to intervene. As they were not parties to the cause, they had no right or authority to prosecute an appeal and have no standing in this Court.
Even had Williamson, and others, been permitted to intervene their proposed answer fails to show an abuse of official discretion on the part of administrative officials to enter into the contracts in question or affect the validity of the proposed bonds.
It was the purpose and intention of F.S. Chapter 75, F.S.A., to afford a quick, speedy and expeditious method of handling validation proceedings such as involved in this case. A time was fixed for all interested persons to intervene. H.C. Williamson, and others, did not take advantage of the opportunity afforded to them and they have given no sufficient reason for intervention at the time set and have utterly failed to show an abuse of discretion on the part of the Circuit Judge in denying their petition to intervene.
In addition to an attempted appeal and an assignment of error in this cause, H.C. Williamson, and others, filed a petition in this Court for leave to apply for writ of error coram nobis. In their brief in support of such petition, they state:
"All of Martin County, except a little fringe along the Dixie Highway on the East side of the County, is agricultural, and as an agricultural and stock raising county, it has great possibilities and is potentially rich. However, its development has been very seriously impaired and retarded for lack of roads through vast areas, there being vast districts in said county that are many miles from any possible highway. Some of the few roads at one time built have been abandoned, and even a portion of the Martin Highway known as the Martin Grade, has become utterly impassable for ordinary traffic. A very substantial portion of the gas tax money that comes into the hands of the State Road Department for the benefit of the State roads and bridges of Martin County is needed in this vast area."
In other words they do not agree with duly created and constituted administrative officials how the money should be spent.
It is not necessary to go into detail as to why the petition for leave to apply for writ of error coram nobis should be denied except to say that it fails to show that the petitioners have any standing to file such petition and the petition before this Court should be, and the same is, hereby denied.
The record shows that every step taken in the proceedings in this cause was authorized by statute and that no provision of the State or Federal Constitutions was violated in the enactment of the statutes under which the administrative agencies operated or that the acts in question violated any provision of the State or Federal Constitutions.
The final decree of the Circuit Court should be, and the same is, hereby
Affirmed.
ROBERTS, C.J., and TERRELL, THOMAS, SEBRING, HOBSON and DREW, JJ., concur.