TERRELL, Justice.
The petitioner, Florida Development Commission, an agency of the State of Florida, filed petition in the Circuit Court of Leon County to validate Florida Development Commission, Road Revenue Bonds of Martin County, to be dated December 1, 1961, in the amount of $600,000. The petition alleged that on September 5, 1961, the Board of County Commissioners of Martin County, acting pursuant to Chapter 61-433, Laws of Florida, Acts of 1961, F.S.A. § 288.281, adopted a resolution requesting the petitioner to acquire the Martin County road project.
The resolution authorized the petitioner to enter into a lease-purchase agreement with the State Road Department. It was agreed that the payments of the rentals accruing to the petitioner were to be made by the State Road Department out of the 20.% surplus gasoline tax funds accruing to Martin County under and by virtue of Section 16, Article IX of the Constitution of Florida, F.S.A. together with any earnings which may accrue from the investments of bond proceeds pending their use for acquisition of the Martin County road project.
On September 11, 1961, petitioner at a meeting duly held in Tallahassee, Florida, adopted a resolution authorizing and directing the issuance of $600,000, Florida Development Commission, Road Revenue Bonds of Martin County, to be dated December 1, 1961. The issuance of the bonds in the sum of $600,000 was authorized payable on the dates and in the amounts specified in the form of the bonds; a lease-purchase agreement between the Florida Development Commission and the State Road Department was required; provision was made for leasing of the road project to the State Road Department for a consideration sufficient to pay and discharge said bonds, interest cost and expenses in connection with the issuance thereof, as and when the bonds became due. It was further provided that the rentals or payments that will be paid to petitioner under the lease-purchase agreement with the State Road Department shall be paid by the State Road Department out of the 20% surplus gasoline taxes that will accrue to Martin County under Section 16, Article IX of the Constitution of Florida.
The petition further alleged that the resolution passed by the Board of County Commissioners of Martin County on September IS, 1961, authorized the State Board of Administration to pay the State Road Department all of such Martin County’s 20% surplus gasoline tax funds as they accrue to the county to the extent necessary to pay the rentals required in the lease-purchase agreement.
October 24, 1961, the State Board of Administration at a regular meeting in Tallahassee adopted a resolution approving said issue of bonds as to legal and fiscal sufficiency. The petition also alleged that October 2, 1961, at a meeting held in Tallahassee the State Road Department adopted a resolution agreeing to the lease and purchase of said Martin County road project. The lease-purchase agreement was executed by the Florida Development Com *10 mission and the State Road Department on October 27, 1961.
October 31, 1961, the Board of County-Commissioners of Martin County adopted a resolution pledging the 20% surplus gasoline taxes for the rental payments under the 'lease-purchase agreement for the Martin County road project to be acquired and established by the state road department for and on behalf of the Florida Development Commission.
Upon filing the petition the rule nisi was issued and published in the Stuart News, a Florida newspaper published in Martin County, Florida, and in the Tallahassee .Democrat, a newspaper published in Leon -•County, requiring the State of Florida, by the State Attorney of the Second and Ninth Judicial Circuits of Florida to appear before the Circuit Court of Leon County in Tallahassee on February 15, 1962, at 10:00 A.M. to show cause, if any they had, why the prayers of the petition should not be granted and the proceedings authorizing the issuance thereof be validated and confirmed.
On the return day of the rule nisi, the state attorneys, William D. Hopkins and Arthur L. Steed, filed their answer setting up various and sundry reasons why the petition was defective and insufficient, concluding with a challenge to the constitutional validity of Chapter 61-433, Laws of Florida, Acts of 1961.
At the hearing before the chancellor February IS, 1962, the Florida Development Commission introduced in evidence the resolution of the Board of County Commissioners of Martin County requesting petitioner to issue and sell the bonds on behalf of the county. With this was included the other instruments detailed in the petition relating to the transaction, including the pledge of the 20% surplus gasoline tax funds for rental payments under the lease-purchase agreement.
The cause came on for final hearing when the chancellor entered a decree validating the bonds. In his decree the chancellor found that petitioner had authority under the Constitution and laws of Florida, particularly Chapter 288, Florida Statutes, F. S.A., and Chapter 61^433, Laws of Florida, Acts of 1961, to issue the road revenue bonds of Martin County for the project in question; that petitioner and the State Road Department had power to execute the lease-purchase agreement filed herein; that the bonds so issued were payable from Martin County surplus gasoline tax funds accruing under Section 16, Article IX of the Constitution and that the bonds „in question were legal as required by the law and Constitution of Florida. This appeal is from the final decree so entered.
First Question: Whether Chapter 61-433, Laws of Florida, Acts of 1961, authorizing the Florida Development Commission to issue and sell road revenue bonds in its own name for and on behalf of the County of Martin is unconstitutional and invalid in so far as it pledges the 20% surplus gasoline tax funds accruing to Martin County under Section 16, Article IX of the Constitution, for payment of principal and interest on the bonds.
This question charges that Chapter 61-* 433, Laws of Florida, Acts of 1961, is unconstitutional and void in so far as it authorizes pledging 20% surplus gasoline tax funds accruing to the several counties, particularly Martin County, under Section 16(c), Article IX. of the Constitution of Florida, to secure debt service on bonds issued by the Florida Development Commission for and on behalf of the several counties.
It is obvious that Chapter 61-433, Acts of 1961 [§ 288.281, Florida Statutes, F.S. A.], was designed to implement Article IX, Section 16(c), by defining the use to which the 20% surplus gasoline tax funds may be utilized by the Board of County Commissioners in the several counties. Section (1) of the act authorizes the Florida Development Commission, when the county *11 commissioners request, to issue and sell interest-bearing notes, bonds or certificates on behalf of the counties. Section (2) provides that the governing entity may prescribe the terms, conditions and limitations under which the bonds may be issued.
Section (3) of said act provides that such bonds, notes or certificates may be secured in whole or in part by the 20% surplus gasoline tax funds of the counties. It further permits pledging the 80% surplus gasoline tax funds accruing to the State Road Department under Section 16(c) when authorized by the State Road Department. Section (2) also authorizes pledging of tolls or other revenue derived from the operation of the project. Chapter 61-433 also implements Section 16(c) of Article IX by designating the purposes to which the 20% surplus gasoline tax funds may be used by the Board of County Commissioners.
In State v. Florida State Improvement Commission, 1948, 160 Fla. 230, 34 So.2d‘ 443, discussing Section 16, Article IX and' other parts of the Constitution and pertinent statutes, we pointed out, among other things that,
“ * * * All of these requirements were designed to stabilize the credit of the counties, to assure a means of liquidating the road and bridge obligations of the counties, and to provide 'to the counties an appropriate and secure means to enable them, through the State Road Department, to extend the state system of roads and bridges within their territorial boundaries. * * ”
We further held in the last cited case that the purpose of Section 16(c), Article IX of the Constitution, was to convert the 20% and 80% surplus gasoline tax funds into county funds to be used for and on behalf of the counties.
In State v. Manatee County, Fla.1960, 119 So.2d 678; State v. State Board of Administration, 1946, 157 Fla. 360, 25 So.2d 880; State v. Florida State Improvement Commission, 1947, 159 Fla. 338, 31 So.2d 548; State v. County of Flagler, Fla.1955, 77 So.2d 765; State v. Florida Development Commission, Fla.1957, 95 So.2d 13, and others, the doctrine of State v. Florida State Improvement Commission, 1948, 160 Fla. 230, 34 So.2d 443, is further discussed and enlarged on.
It is not amiss to call attention to the fact that the various provisions of Section 16, Article IX of the Constitution, with the implementing statute, Chapter 23758, Acts of 1947, F.S.A. §§ 288.23, 288.26-288.30, inaugurated what might be called a new era in county road and bridge construction and financing. The Constitution appropriated the funds but left it with the local authority or the State Board of Administration to dispense them. We had recently emerged from the depression. County road and bridge construction was at a slow pace; county.and road district bonds were below par in many places; the said amendment adopted in 1942 created the State Board of Administration and vested it with all the powers of the statutory Board of Administration. In the management and control of the two cents gas tax and all other funds including bonds-and other evidence of debt, issued prior to July 1, 1931, for road and bridge purposes by any county or special taxing district, the said board was given the statutory powers to issue bonds in behalf of counties and special road and bridge districts such as that involved in this case. We find nothing in the contracts and proceedings involved in this case that was not considered and approved in the cases cited, above.
Second Qtiestion: Whether the pledge of the 20% surplus gasoline taxes accruing to the County of Martin under the provisions of Section 16, Article IX of the Florida Constitution, as provided in the lease-purchase agreement between petitioner and State Road Department, constitutes an illegal, unauthorized, and im *12 proper use of such 20% surplus gasoline taxes.
Was the pledge of the 20% surplus gasoline tax funds accruing to Martin County to secure payment of said county’s road and revenue bonds a proper use of said funds as provided by Section 16, Article IX of the Constitution ?
In State v. Manatee County, 119 So.2d 678, we were confronted with a question very similar to this. Reverting to State v. Florida State Improvement Commission, 160 Fla. 230, 34 So.2d 443, and other cases cited in support of question one, we held that the 20% surplus gas funds accruing under Section 16(c), Article IX, may be pledged for debt service for rights of way, road construction or road purchase in the manner proposed in the last cited case. We think the Manatee County case disposes of the question contrary to the contention of appellant. We have examined the case of City of Lynn Haven v. Bay County, Fla.1950, 47 So.2d 894, and other cases relied on by appellant, but the facts and circumstances controlling them are so different from the facts in this case that they are not pertinent and certainly not controlling here.
Third Question: Whether the title to Chapter 61-433, Laws of Florida, Acts of 1961, is defective and violative of Article III, Section 16, of the Florida Constitution.
Appellant contends that the title of Chapter 61-433 fails to give proper notice of its contents. State ex rel. Parrish v. Lee, 1945, 156 Fla. 578, 23 So.2d 731, is relied on to support this contention.
The title to Chapter 61-433, Acts of 1961, is as follows:
“AN ACT relating to the Florida development commission; amending Chapter 288, Florida Statutes, by adding a new Section 288.281, authorizing the Florida development commission to issue and sell revenue bonds, notes, or certificates on behalf of any county, district, or authority for the purpose of constructing roads or bridges or acquiring rights of way; authorizing the construction or acquisition of the project by the state road department; authorizing the county, district, or authority to place limitations on the application of the bond proceeds; providing that the bonds issued by the commission may be paid from surplus gasoline taxes, tolls, or ad valorem taxes that are legally available for that purpose; providing an effective date.”
Section 16, Article III of the Constitution provides:
“Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subj ect shall be briefly expressed in the title.”
In State ex rel. Moodie v. Bryan, 1905, 50 Fla. 293, 39 So. 929, this court defined the following test for determining whether or not the title to an act of the legislature met the requirements of Section 16, Article III of the Constitution. Said the court,
“If the title to the act fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill it is all that is necessary.”
Anyone reading the title in question must reach the conclusion that it has to do with bonds, notes or certificates issued by the county to construct roads, bridges or to acquire rights of way, that the State Road Department is authorized to acquire or construct the project, the county or district may place limitations on the application of the bonds and that they are payable from surplus gasoline taxes, tolls or other funds legally available for the purpose. The word “relating” with which the title begins broadens its significance in relation to every act comprehended or authorized by the law.
Measured by the test prescribed by this court, we think the title was ample and *13 sufficient to put the world on notice as to its contents.
The judgment appealed from must be, and is hereby, affirmed.
Affirmed.
ROBERTS, C. J., and DREW, THOR-NAL and CALDWELL, JJ., concur.