DREW, Justice.
This is an appeal from a decree of the Circuit Court for Leon County validating Lee County Road Revenue Bonds in the amount of $2,600,000 issued by the Florida Development Commission pursuant to resolutions of May 15, 1961, and November 7, 1957, authorizing pari passu bonds in accordance with specified terms to mature between January 1963 and 1986. The decree recites full compliance with all applicable provisions of law.[1]
*678 Appellant attacks the validation decree, and the legality of the bond issue approved thereby, on the ground that pari passu bonds by their nature conflict with terms of the enabling legislation[2] relating to fiscal powers of the appellee Development Commission. We are not persuaded, however, that the provision for refunding procedures in F.S. Sec. 288.151, F.S.A., negates the plan utilized in the situation at bar, nor is legislative control over future issues in any way impinged. General principles of law governing parity revenue bond issues are established in earlier cases,[3] and the definition of terms and purpose at the outset, in the resolution authorizing the original and successive issues here involved, payable on a par from a single source and sinking fund, removes any question as to unlawful dilution of collateral or rights vested in prior holders.
Motion to dsimiss has been addressed by appellant to a joinder in appeal filed by several of the respondents below more than twenty days after entry of the final decree.
Because of the unique statutory design for disposition of these proceedings with greater speed than other litigation, and the impossibility of applying the language of the rule as to joinder in appeals generally,[4] we construe the applicable rule *679 and statute, F.A.R. 4.3 and F.S. Sec. 75.08, F.S.A.,[5] to preclude joinder in appeals from bond validation decrees after the prescribed twenty day period. The motion to dismiss such joinder by appellees herein should be and is therefore granted. Our conclusion -on this point, however, is in this case without significant effect, because the questions raised by appellees’ assignments can, upon the record presented, be disposed of as if raised by cross assignments of error under F.A.R. 3.5, subd. b.
The fundamental objections raised by ap-pellees’ assignments concern the relationship between Section 3, Article VIII,[6] and Section 16, Article IX,[7] of the Florida Constitution, the effect of the first cited provision upon the security of a pledge of receipts under the latter, and the propriety of raising the point in proceedings for validation of bonds secured by such a pledge. The decree appealed found that the pledge of those receipts in the lease purchase agreements involved in this case constituted an irrevocable contract between the petitioner Florida Development Commission, the State Road Department, and the bondholders, and that “although the Legislature may subsequently change the boundaries of Lee County so as to reduce the area of that county, such change cannot have the effect of impairing the security of the holders of said bonds.”
We think the issues posed by appellees in their cross assignments of error are, to the extent hereinafter treated, pertinent and within the scope of this proceeding.[8] Legislative power under Article VIII to alter a county’s area or boundaries constitutes, in the absence of other constitutional inhibition, a very material circumstance in the definition of the revenues pledged in *680 this case and in the evaluation of the obligation secured only by that pledge of revenues accruing to a designated county on the basis, among others, of geographical area encompassed by that county.
So far as county indebtedness generally is concerned, legislative authority to diminish the area of an existing county under Section 3, Article VIII, is expressly conditioned upon provision for division or reallocation of its liabilities “upon the basis of the assessed value of all property subject to taxation” within the area transferred. The validity and effect of debt transfers under this clause have been repeatedly adjudicated,[9] the correlation between obligations and underlying security being unquestionably fair and constant.
Our conclusion, from a study of the unique problem presented under the terms of Article IX, Sec. 16, is that it establishes a basis for computation of the potential income from this levy in any designated county area, and for insuring its integrity when obligated in funding transactions, at least as stable as that of assessable property contained therein. The accomplishment of that objective was in fact the reason for its enactment.[10]
Under Section 16 the provision for distribution “among the several counties” according to area, population, and state road contributions can only mean distribution over the state by a formula based on population and road contributions together with the quantum of geographical area to which distribution is made, effecting an appropriation of the subject funds which is stable, predictable, and unalterable except for population change. The “several counties” contemplated must be either the units existing at the time of the constitutional levy or such counties as may by acquisition of their geographical area in part or in whole become entitled to whatever share would be attributable to that portion of the original county unit, subject to prior obligation of those funds. In the practical problem of allocating the funds due a county when its boundaries have been altered there are presented only the factual issues of population and area contained within any constituent part, and the determination of the share of the original county road contributions attributable to that part on the basis of its area and population. Thus a pledge of funds to accrue to a named county is precisely the equivalent of a pledge of funds accruing to that county area, and the power of anticipating such funds [11] necessarily implies the authority to pledge funds which may accrue to the geographical area then within a county’s boundaries, whatever names or county governing body may in the future be attached to such area.
This result fully accords with the history and purpose of this section of the constitution, previously detailed in opinions of this Court,[12] and with our obligation under basic principles of constitutional construction[13] requiring effect to be given to both of the cited sections so as to preserve the power of *681 the legislature in the field of county boundaries while superimposing thereon the restraints inherent in the subsequent enactment of the provision controlling the gas tax levy. A contrary construction of the constitutional formula would permit the legislature to do indirectly that which Section 16 prohibits being done directly, by its very terms and nature as a part of the organic law. Legislative alteration of county boundaries might thus require distribution of these funds to county entities on the basis of total area within their boundaries at the time of distribution without regard to prior anticipation of such funds accruing to any part of the constituent area. Such conclusion would permit legislative manipulation of the revenue distribution and prevent effective local control; at the very least it would preclude anticipation of these proceeds on any sound basis, often conceded to be the only practical means for realization of a long-range road program of magnitude or uniformity over the state.
We have given due consideration to the other errors assigned by both the appellant and appellees [14] and find them to be separately and severally without merit.
The decree of the trial court, as herein-above construed, should be and it is, hereby
Affirmed.[15]
TERRELL, Acting C. J., and THORN-AL, O’CONNELL and CALDWELL, JJ., concur.

. The findings, in part, were:
“ * * *• THIRD: That the revenue bonds to be issued by Petitioner to finance the cost of constructing and establishing said Lee County Road Project will be payable solely from the rental payments to be made to the Petitioner by the State Road Department of Florida under a Lease-Purchase Agreement authorized by resolution of Petitioner adopted November 7, 1957 and the said Supplemental Lease-Purchase Agreement filed herein; said rental payments consisting of all of the Lee County gasoline tax funds as defined in said Lease-Purchase Agreement and said Supplemental Lease-Purchase Agreement accruing in each year, from and after the date of the sale of the bonds, to the State Road Department of Florida for use in Lee County under the provisions of Section 16 of Article IX of the Constitution of Florida [F.S.A.], in the manner provided in said Lease-Purchase Agreement and said Supplemental Lease-Purchase Agreement.
“FOURTH: That pursuant to the Constitution and Laws of the State of Florida, including said Chapter 288, Florida Statutes, [F.S.A.], Petitioner was authorized to and did, by resolution duly and legally adopted on May 15, 1961, authorize and provide for the issuance of interest bearing Lee County Road Revenue Bonds of the Petitioner in the aggregate amount of $2,600,000, dated January 1, 1961, in the denomination of $1,000 each, bearing interest at a rate not exceeding the statutory rate of six per centum (6%) per annum, and maturing serially on January 1 in the years 1963 to 1986, inclusive, for the purpose of paying the cost of constructing said Lee County Road Project, all of which is more fully set forth in the certified copy of the proceedings of the Petitioner and the certified copy of said resolution heretofore filed herein.
“FIFTH: That said revenue bonds to be issued by Petitioner will not be or constitute a debt of the State of Florida, or of Lee County, or of any political subdivision of the State of Florida within the meaning of any constitutional or statutory provision, nor will said revenue bonds constitute a charge, lien, or encumbrance upon any property of the State of Florida, of Lee County, or any other political subdivision of the State of Florida, or Petitioner, or the State Road Department of Florida, or any other agency or instrumentality of the State of Florida, but will be payable solely from and secured by a lien on the rentals to be derived by Petitioner from said Supplemental Lease- *678 Purchase Agreement hereinabove referred to and a Lease-Purchase Agreement executed under authority of a resolution adopted by Petitioner on November 7, 1957.
*****
“EIGHTH: That the anticipated 80% surplus gasoline tax funds accruing to the State Road Department of Florida for use in Lee County under Article IX, Section 16, of the Constitution of Florida will be sufficient to pay the rentals to Petitioner and said rentals will be sufficient in amount to pay the principal of and interest on all of the said outstanding bonds issued under authority of Petitioner’s said original resolution dated November 7, 1957 and Petitioner’s resolution dated Hay 15, 1961, and to make all reserve, sinking fund, and other payments provided for in said resolutions.
***** “THIRTEENTH: That the Petitioner is authorized to issue the bonds by its resolution adopted on May 15, 1961 as pari passu additional bonds pursuant to and within the terms, limitations, and conditions contained in said original resolution, and said bonds when issued will be payable on a parity with the said outstanding bonds issued under the authority of said resolution adopted on November 7, 1957.
* * * * *
“FIFTEENTH: That all of the provisions of the resolution authorizing said revenue bonds and of said Supplemental Lease-Purchase Agreement are authorized by law and said Supplemental Lease-Purchase Agreement constitutes a valid and legally enforceable agreement between Petitioner and the State Road Department in accordance with the terms thereof.
“SIXTEENTH: That the State Road Department has, by resolutions duly adopted, pledged the 80% surplus gasoline tax funds that will accrue in each year hereafter to the State Road Department for use in Lee County, Florida, under the provisions of Article IX, Section 16, of the Florida Constitution, for the payment of the principal of and interest on said outstanding bonds issued by Petitioner under authority of its resolution adopted November 7, 1957 and the bonds to be issued by Petitioner under authority of its resolution adopted May 15, 1961, and Lee County, Florida, has by resolutions duly adopted agreed to such pledge; that the pledge of said gasoline taxes as provided in the Lease-Purchase Agreement and the Supplemental Lease-Purchase Agreement is and constitutes an irrevocable contract between Petitioner, the State Road Department, and the holders of said bonds, and although the Legislature may subsequently change the boundaries of Lee County so as to reduce the area of that county, such change cannot have the effect of impairing the security of the holders of said bonds.

. Chapter 288, Florida Statutes, F.S.A.

. State v. City of Jacksonville, 131 Fla. 163, 179 So. 172; State v. City of Jacksonville, 1947, 159 Fla. 328, 31 So.2d 385; Constans v. City of Delray Beach, Fla.1962, 138 So.2d 497.

. F.A.R. 3.11, subd. b, 31 F.S.A.;
“ * * * Should an appeal be com- *679 mencecl more than 50 days after the rendition of the decision, judgment, decree, or order appealed from, an appellee shall be allowed ten days after being served with a copy of the notice of appeal within which to file his joinder in appeal and his assignments of error.”

. Florida Appellate Rule 4.3 provides:
“Appeals may be taken in bond validation proceedings only from the final decree within 20 days after the rendition of such decree. * * * ”
F.S. Sec. 75.08, F.S.A., relating to review of bond validation decrees, reads:
“Any party to the cause, whether petitioner, defendant or intervenor, or otherwise, dissatisfied with the final decree, may appeal therefrom to the supreme court within twenty days after the entry of such decree. * * * ”

. “§ 3. Establishment of new counties. The Legislature shall have power to establish new counties, and to change county lines. Every newly established county shall be held liable for its proportion of the then existing liabilities of the county or counties from which it shall be formed, rated upon the basis of the assessed value of the property, both real and personal, subject to taxation within the territory taken from any county or counties; and every county acquiring additional territory from another county shall be held liable for its proportion of the liabilities of such other county existing at the time of such acquisition, to be rated upon the basis of the assessed value of all property subject to taxation within such acquired territory.”

. “§ 16. Board of administration; gasoline and like taxes, distribution and use; etc.— (a) That beginning January 1st, 1943, and for fifty (50) years thereafter, the proceeds of two (20) cents per gallon of the total tax levied by state law upon gasoline and other like products of petroleum, now known as the Second Gas Tax, and upon other fuels used to propel motor vehicles, shall as collected be placed monthly in the ‘State Roads Distribution Fund’ in the State Treasury and divided into three (3) equal parts which shall be distributed monthly among the several counties as follows: one part according to area, one part according to population, and one part according to the counties’ contributions to the cost of state road construction in the ratio of distribution as provided in Chapter 15659, Laws of Florida, Acts of 1931, * * *. Such funds so distributed shall be administered by the State Board of Administration as hereinafter provided.”

. For definition of collateral issues excluded see State v. City of Miami, Fla, 1958, 103 So.2d 185; State v. Dade County, Fla.1954, 70 So.2d 837. Cf. Boatwright v. City of Jacksonville, 117 Fla, 477, 158 So. 42.

. Young et al. v. Dixie County, 89 Fla. 510, 105 So. 105; State v. Board of Public Instruction, 131 Fla. 272, 176 So. 96.

. State v. Florida State Improvement Commission, 1948, 160 Fla. 230, 34 So.2d 443.

. Ibid, 34 So.2d at p. 449, et seq.

. Id. Other decisions approving the validation of bonds pledging these funds are State v. State Board of Administration, 1946, 157 Fla. 360, 25 So.2d 880; State v. Florida State Improvement Commission, 1947, 159 Fla. 338, 31 So.2d 548; State v. Florida State Improvement Commission, 1947, 159 Fla. 351, 31 So.2d 555; State v. Florida State Improvement Commission, Fla.1950, 47 So.2d 601; State v. Florida State Improvement Commission, Fla.1954, 71 So.2d 146; State v. County of Flagler, Fla.1955, 77 So. 2d 765; State v. Florida Development Commission, Fla.1957, 95 So.2d 13; State v. Manatee County, Fla.1960, 119 So.2d 678.

.State ex rel. Moodie v. Bryan, 50 Fla. 293, 39 So. 929; Mugge v. Warnell Lum *681 ber & Veneer Co., 58 Fla. 318, 50 So. 645; Barrow v. Holland, Fla.1960, 125 So.2d 749.

. Appellees assign as error the action of the trial court in dismissing a counterclaim for declaratory decree and injunction. Neither the statutes nor rules provide for counterclaims in validation proceedings. Proper defenses should be raised in respondent’s answer. The trial court quite properly dismissed such counterclaim. See footnote 8, supra.

. This case does not present any problem regarding the impact of future legislative changes of county boundaries as they might affect gasoline tax income available to support any pari-passu bonds which might be issued subsequent to such boundary changes. Therefore we do not here pass upon this question.