O’CONNELL, Justice.
By Chapter 63-200, Laws of Florida, the 1963 Legislature established new boundaries for Glades, Hendry, Okeechobee, Martin and Palm Beach Counties. Under the statute the area of Lake Okeechobee, which theretofore had been wholly in Palm Beach County, was so divided that each of the other four counties were given a pie-shaped portion thereof.
The appellants sued for declaratory decree contending that: (1) Chapter 63-200 is unconstitutional because the boundary descriptions were deficient, the title thereto was defective and the act contained two subject matters in violation of Section 16, Article III, Florida Constitution, F.S.A.; (2) Section 16, Article IX, Florida Constitution irrevocably allocated the “second gasoline tax” for the full term of fifty years "on the area and road contribution factors existent on adoption thereof;” (3) the distribution of the “seventh cent” of gasoline taxes and the tax on certain motor fuels levied pursuant to Sections 20844 and 209.02, F.S.A., respectively, should not be affected by the passage of Chapter 63-200.
In his final decree the chancellor held that: (1) Chapter 63-200 was valid; (2) Section 16, Article IX, Florida Constitution, does not irrevocably allocate the second gasoline tax for the full term of fifty years on county areas in effect on its adoption and in no way restricts the power of legislature to change county lines as authorized in Section 3, Article VIII, Florida Constitution; and (3) the distribution of the “seventh cent” of gasoline and other motor fuel taxes would have to be made on basis of new county areas established by Chapter 63-200. The decree provided that the proceeds of the second gasoline tax which were pledged to the payment of certain Palm Beach County road and bridge revenue bonds prior to the enactment of Chapter 63-200 must continue to be allocated and distributed in accordance with the area of Palm Beach County, as it existed prior to adoption of said statute, until all of the obligations of the bonds had been discharged or provision for payment made. The parties agree that this provision is proper. Section 6, Chapter 63-200 contains such a provision. We have held the same. State v. Florida Development Commission, Fla.1962, 143 So.2d 676.
On this appeal appellants again urge that the subject statute is invalid because the boundary descriptions are too vague and indefinite; that Section 16, Article IX, irrevocably allocates the second gasoline tax for a period of fifty years on the basis of county area and road construction contribution as these factors existed on January 1, 1943 and July 1, 1931, respectively; and that the seventh cent is also irrevocably allocated on the same basis. In addition appellants contend, for the first time, that the statute is invalid because passed by an unconstitutionally apportioned legislature.
*359 We will consider these questions in the order stated above.
A careful reading of Chapter 63-200 and a plotting of the county boundaries described therein is necessary for a full understanding of the defects complained of by the appellants. The chancellor discussed the variances at length. Nothing can be gained by repeating or summarizing either those portions of his decree or the testimony of experts as to the descriptions and the difficulty attendant on their use.
The chancellor correctly found the legislative intent to be to divide the area of Lake Okeechobee, previously entirely within Palm Beach County, among all counties bordering the lake. He further found that to accomplish this division the legislature intended to define a common point near the center of the lake “and to this point extend a line from the several points along the shore of Lake Okeechobee where the prior existing boundaries of the several counties reach such shore. This would produce within each county a ‘wedge’ of the lake, spreading from the common point to the upland of each county bordering the lake.”
As appears from a reading of the statute the common point selected is the NE Corner of Section 36, Township 40 South, Range 34 East. Since the lake area has never been surveyed, this is a fictional point. In actuality there is no such Section 36. However, as the chancellor stated, the description of Palm Beach County in Section 5, Chapter 63-200,
“reveals an unambiguous meaning of the term ‘northeast corner of Section 36, Township 40 S, 34 E.’ This is so because it is clear that the point so described is to be found at the intersection of two perpendicular lines, namely, one located by commencing at the point on the shore of Lake Okeechobee where the line dividing Range 34 E from Range 35 E and being the prior boundary between Palm Beach and Hendry Counties, and thence proceeding in a straight line due or true north and the other line which is located by proceeding due or true west from the point on the margin of Lake Okeechobee where the prior boundary between Martin and Palm Beach Counties reach said water’s edge. Within the language of Section 5 there are references to actual established section and township lines whose extension true north in one case and true west in the other to the point of intersection would serve to establish the precise point the Legislature intended to constitute the northwest corner of Palm Beach County and define that county’s portion of Lake Okeechobee. As the boundaries of all of the other counties refer to the same point, it is obvious that the legislature intended that point, to be established as aforesaid, to constitute the one definite common point in the boundaries of each of the counties.”
The chancellor’s answer to appellant’s contention on this point is correct. The descriptions contained in the statute might not be adequate in a conveyance or contract involving property rights or transfers of land. But boundary descriptions in legislative acts establishing county lines are not required to be drawn with the same exactness and nicety.
The rule applicable in cases such as this is well stated in State ex rel. Cheyney v. Sammons, 1911, 62 Fla. 303, 57 So. 196. There, this court, 57 So. at page 200, said:
“A defect in the description of the territory included in the new county does not render the act unconstitutional or invalid. The act is not void unless the legislative intent cannot be effectuated, because the description is so defective as not to include substantially all of the intended territory, or because the defective description will include or exclude territory not intended, so as to make it appear that the act would not have been passed if the defective *360 description liad been known, or because it is so entirely defective as to be unintelligible or to render the act unenforceable in its essential features.”
The statute, as interpreted and construed by the chancellor meets the test of this rule. The chancellor correctly held it not to be invalid because of defective description.
We come next to appellants’ contention that Section 16, Article IX, adopted in 1942, and effective January 1, 1943, irrevocably allocates the proceeds of the second gasoline tax on the basis of county areas as they existed on the effective date of the amendment, i. e., January 1, 1943.
Section 16, Article IX, provides that for fifty years beginning January 1, 1943 the proceeds of two cents (2‡) per gallon of the gasoline tax (the Second Gas Tax) and the tax on other fuels shall be divided into three equal parts and distributed monthly to the several counties as follows:
“ * * * one part according to area, one part according to population, and one part according to the counties’ contributions to the cost of State road construction in the ratio of distribution as provided in Chapter 15659, Laws of Florida, Acts of 1931 * *
Chapter 15659, supra, now appearing in part as F.S. Section 208.11, F.S.A., prescribes the method of determining the contributions of the counties to the cost of state road construction, and requires that it be done within 90 days of the effective date thereof. The effect of this statute and Section 16, Article IX is to fix irrevocably the factor by which one third of the second gas tax is to be distributed. Thus, during the entire fifty year period one third of the second gas tax will be distributed on a basis of the counties’ contributions to state road construction prior to July 1, 1931 as determined by the certificates filed with the state comptroller in 1931 pursuant to Chapter 15659. The distribution of this third of the second gas tax is not in dispute here.
Appellants do not contend that the one third of the second gas tax distributable on the basis of county population is fixed by the population of the several counties as of January 1, 1943. They argue only that the one third of the tax distributable according to county area was fixed as of January 1, 1943 and that a subsequent change in county boundaries and area cannot affect any county’s share of the tax.
The chancellor held that appellants’ contention was without merit. We concur.
Appellants argue first that there have been numerous changes in county boundaries since the adoption of Section 16, Article IX, but that the state comptroller has never recognized such changes in computing the distribution of the one third of the tax allocated on a basis of area. They seek to convert this alleged action by the comptroller into an administrative construction which they say should not be disturbed unless it be unreasonable or erroneous. State ex rel. Franklin County et al., v. Lee, Fla.1939, 137 Fla. 658, 188 So. 775. But, as the chancellor noted in his decree, it has not been shown that any such changes were substantial and we add that it does not appear that the effect of any such changes has ever been presented to or decided by the courts of this state.
Appellants cite State ex rel. Franklin County v. Lee, supra, and State v. Florida Development Commission, Fla.1962, 143 So.2d 676, in support of their position. These cases are not relevant to the issue before us. The decision in the Franklin County case merely upheld the comptroller’s construction that, for the purposes relevant here, county area did not include the waters of the Gulf of Mexico lying within the boundaries of certain Gulf Coast counties. No change of county boundaries was involved. In State v. Florida Development Commission, supra, this court held that the legislature could change county boundaries, *361 but that insofar as pre-existing funded obligations were concerned, the change in area would not, to the extent necessary to service such funded debts, affect the allocation of the one third of the tax based on county area.
The closest that we have come to dealing with the question now before us was in Glades County v. Green, Fla.1963, 154 So.2d 320. In that case this court recited that the petitioner therein contended, as do the appellees here, that the computation of the funds due each county under the constitutional formula “was not a computation to be made once and for all in 1931, except as to the factor of the county’s aggregate contribution to state roads up to and including the year 1931, but * * * is to be made anew at the end of each month * * * for the period of fifty years * * Then after copying pertinent portions of the subject constitutional provision and statutes this court obviously agreed with the views of petitioners therein, for we said at 154 So.2d, page 324:
■“After examination of these provisions of the law, it seems clear that the distribution of the gas tax funds is in the hands of the comptroller and that such distribution be done monthly.”
This statement is not as explicit as it might be. Rather than rely upon it as dispositive of the point we will again examine the question.
Neither the subject constitutional provision nor the statute furnishes any support for appellants’ view, but rather dictates a contrary result. These documents require that the tax monies involved will be divided into three equal parts and distributed monthly among the counties on the factors named. Then it is specifically provided that the allocation based on the contribution to cost of state road construction as computed in Chapter 15659,' supra, “shall be taken and deemed conclusive in computing the monthly amounts distributable according to said contributions.” There is no basis for extending this specific instruction also to apply to the computation of the amounts distributable according to poulation or area. The intent of the provisions is clear and unambiguous. But if construction be required we think the maxim “expressio unius est exclusio alterius” would result in the same conclusion even though its application here might be somewhat inverse.
We understand the subject constitutional and statutory provision to mean simply that the monies due the several counties shall be computed and distributed monthly on a basis of the factors as they exist each month, except that the computation made in 1931, pursuant to Chapter 15659, supra, shall control the amount allocable on the basis of prior contributions to the cost of state road construction.
This means that population or area changes will be reflected in the monthly computations. This, in effect, is what we held in Glades County v. Green, supra.
Logic, reason and the obvious purpose of the distribution to the counties of the second gas tax all support the conclusion that the computation of those portions of the tax allocable on population and county area were not irrevocably fixed as of January 1, 1943.
The purpose of the constitutional amendment and statute was to assist the counties in paying off existing funded debts for road construction and to furnish a stable source of revenue to assist in constructing new facilities, which revenues if need be could be anticipated to secure new revenue issues. Since the authorizing and implementing laws did not direct the distribution of the monies equally to all counties or solely on a basis of factors as they existed in either 1931 or 1943, the people and the legislature must have intended that the formula prescribed would result in distribution of two of the three portions of *362 the tax portions of the tax monies on a basis that would have some continuing relationship to the need of the various counties for roads and funds to construct them. Population and area of a county both have a reasonable relationship to the need for road facilities in the county, and therefore to monies needed for construction of roads. As either factor changes, the need for roads and construction funds will change accordingly, although admittedly not in direct proportion.
The appellants apparently admit that the distribution of the share allocated on population should change with corresponding changes in population. We see no basis for distinguishing between population and area, if need for roads and funds is the answer which the formula is to produce. Certainly, if county area is a logical factor by which to determine need for roads, and to allocate Tunds, for this purpose, the area of the several counties as they actually exist must be used as the basis of the allocation. Otherwise the relationship between need and the monies distributed ceases to be reasonable. An increase in area of one county will reasonably increase the need for roads and monies for the construction and maintenance thereof, while decreasing the needs of the county losing the area. For example, if instead of dividing lake area, Chapter 63-200 had awarded the other counties a substantial portion of the land area of Palm Beach County with existing roads and others badly needed, it would be obviously unreasonable and inequitable to continue to give to Palm Beach County the same proportion of the share of the tax allocable on county area. The fact that in the instant case we are dealing with water area and that it is not likely that roads or bridges will be constructed thereon is of no consequence for, in application of the formula, the area of land-locked lakes and streams within a county is considered in computing the county area. If it were not this litigation would not be before us.
We therefore conclude that the allocation and distribution of second gas tax monies on the factor of county area, as well as that based on population, was not irrevocably fixed, but must be allocated and distributed on the basis of county area and population as they exist from month to month. This statement is subject to the rule that any change in county area shall not affect the allocation and distribution of such monies to the extent necessary to preserve the security for and payment of any pre-existing funded debt. State v. Florida Development Commission, Fla.1962, 143 So.2d 676.
Appellants’ contention that the portion of the seventh cent of the gasoline tax allocable on basis of county area is also irrevocably fixed by county area as it existed in 1943 is also without merit. Section 208.44(3), F.S.A., requires that the net proceeds of this tax be distributed to the several counties on the same basis as the second gas tax is distributed under Section 16, Article IX. Our answer to appellants’ second question therefore also controls the basis on which this tax money will be distributed so long as the statute remains unchanged. However there is a more obvious answer to appellants’ contention. This tax is purely statutory. At its will, the legislature may abolish the tax or alter the manner of distribution. There is nothing irrevocable about either its levy or distribution.
For their fourth and fifth questions appellants say that Chapter 63-200 is invalid, first, because passed by an unconstitutionally apportioned legislature, citing Swann v. Adams, 378 U.S. 553, 84 S.Ct. 1904, 12 L.Ed.2d 1033, and second, because it is in violation of Section 1, Declaration of Rights, Florida Constitution, in that “through indirect curtailment of their rights as voters the appellants and those they represent have been denied equal protection of the law.”
Appellees moved to strike these questions from appellants’ brief on the ground that they were not presented to the , *363 trial court but are raised for the first time in this court. We have previously held that a fundamental error, based on the unconstitutionality of a statute, may be raised for the first time on appeal to this court. Town of Monticello v. Finlayson, 1945, 156 Fla. 568, 23 So.2d 843. So we will consider the questions.
As authority for their position appellants cite only Swann v. Adams, supra. Our understanding of that memorandum decision, and the cases cited therein, is that the Florida Legislature was not apportioned and constituted in compliance with the United States Supreme Court’s views as explained in those cases. Neither those decisions nor any others known to us have yet held legislative acts to be unconstitutional because the legislature adopting them was later found to be unconstitutionally apportioned. Apportionment statutes which have been struck down have been found invalid not because the legislature adopting the act was unconstitutionally apportioned, but because the plan encompassed in the statute was not a proper one.
To hold as appellants urge would go far beyond what the federal courts have decreed, and require us to hold retroactively that the acts of a malapportioned legislature are ipso facto unconstitutional. Neither precedent nor reason support such a holding.
We, therefore, reject appellants’ fourth and fifth questions.
The final decree of the chancellor is affirmed.
THORNAL, C. J., and THOMAS, DREW, CALDWELL and BARNS (Ret.), JJ-, concur.
ERVIN, J., dissents with opinion.