STATE v. CITY OF MIAMI

157 So. 13.
En Banc.
Opinion Filed September 7, 1934.

No brief filed for Appellant;

*J. W. Watson, Jr.,* and *William W. Charles,* for Appellee.

BROWN, J.—This is an appeal from an order striking portions of appellant's answer and from a final decree of the

Circuit Court in and for Dade County validating an issue of refunding bonds of the City of Miami, amounting in the aggregate to the sum of $29,891,000, for the purpose of refunding its total outstanding bonded indebtedness, together with the interest which has accrued and will accrue thereon up to the date of the consummation of the refunding. The refunding bonds are thirty year bonds and will bear interest at the rates borne by the particular outstanding bonds to be refunded and exchanged therefor, except that so much of the interest maturing on and before January 1, 1936, in excess of three per cent. per annum, will be extended as it matures by giving therefor certificates of indebtedness bearing interest at the rate of two per cent. per annum. The evident purpose of this provision for taking care of all interest in excess of three per cent. per annum maturing on or before January 1, 1936, is to lighten the burden of early cash payments and give the city a "breathing spell" as it were, during the next two years, in view of the continued financial and economic depression which has embarrassed the City of Miami and many other municipalities and private business as well, in this State, and in the nation at large, during the past few years.

It is claimed, however, in the appellant's answer in the court below, that the city was without authority to provide for this deferment in part of interest payments by the issuance of certificates of indebtedness as provided for in the resolution. There is no merit in this objection. These certificates of indebtedness, thus provided for as an incident to the general refunding of the bonded indebtedness of the city, are in substance bonds of the city . Sullivan v. Tampa, 101 Fla. 298, 134 So. 211.

Section 2 of Chapter 15686 of the Special Acts of 1931, being an Act to authorize the City of Miami to issue bonds to refund its indebtedness and interest thereon, provides

that the obligations authorized by it may be made registrable as to principal, or as to both principal and interest, under such terms and conditions as may be determined by the City Commission.

Section 6 of Article 9 of the Constitution, as amended in November, 1930, expressly recognizes the right of municipalities to issue refunding bonds for refunding the existing bonds of the city and interest thereon. At the next session of the Legislature thereafter, and during the month of July, 1931, a general refunding Act was adopted by the Legislature, known as Chapter 15772, Laws of Florida, which was intended by its terms as a supplemental and additional grant of power to the various taxing units of the State, including municipalities (See Section 26 of the Act); and a Special Act relating to the City of Miami, above referred to, Chapter 15686, had been adopted just a few days previous to the adoption of the General Act, the Special Act having been approved on June 24, 1931.

In addition to the authority granted to the city by the Acts above referred to, we have held that where a municipality is duly authorized to exercise a particular municipal function, and the manner of its exercise is not defined in all respects by statute, but is left to the governing body of the city, the courts will not undertake to control the manner of its exercise by such governing body where no applicable rule of law is violated and the authority given is not exceeded or abused.

Perry v. Town of Panama City, 67 Fla. 285, 65 So. 6, Chapter 15686 does not limit the city to the refunding of bonds or interest coupons outstanding upon the date of its passage, but on the other hand authorized a refunding of "all funded indebtedness." The funded indebtedness outstanding at the time of the passage of the Act will still be outstanding after the issuance of the refunding bonds, ex-

.cept that it will be evidenced by a different obligation. The outstanding bonds are not the debt, but merely evidence of the existence of the debt. State v. City of Okeechobee, 99 Fla. 617, 127 So. 339. And the statute clearly authorizes the refunding of both principal and interest, and Section 3 of the Act provides that the refunding bonds may be exchanged for an equal amount of indebtedness to be retired thereby, including indebtedness not matured, and Section 1 of said Special Act defines the word "indebtedness" so as to include interest as well as principal.

One of the grounds of objection is that some of the outstanding bonds to be refunded were issued by the municipalities of Coconut Grove, Buena Vista and Silver Bluff, and that when said cities and town were taken into the City of Miami it was provided that they should not be liable or taxed to pay any part of the indebtedness of any other city or town to which they were annexed, whereas the resolution providing for the issuance of these refunding obligations pledges a levy of taxes upon all taxable property now embraced within the present City of Miami. This question, concerning these identical cities and towns, was settled by this Court in the case of State v. City of Miami, 103rd, Fla. 54, 137 So. 261, which held that when the town and cities were annexed to the City of Miami they did not acquire any contract rights but only a political right or concession revokable by the grantor, and which was revoked by Section 9 of said Chapter 15686 of the Acts of 1931. So this question has already been settled by this Court, as are most of the other questions which have been raised in this case. See Whitney v. Hillsboro County, 99th Fla. 628, 127 So. 486; Martin v. Dade Muck Land Company, 95th Fla. 530, 116th So. 449; State v. Brevard County, 99th Fla. 226, 126 So. 353, wherein the power of the Legislature to authorize municipalities and other taxing units to issue bonds is recog-

nized. The existence of this power, in spite of the constitutional prohibition against the issuance of State bonds, was also recognized by the adoption of the amendment to Article 9, Section 6, of the Constitution, above referred to, whereby municipalities are now prohibited from issuing bonds except upon a vote of the pepole, unless the bonds so issued are refundings bonds.

It is claimed that the city has no authority to pledge to the payment of the refunding bonds the proceeds it might receive from the sale of any property, public utility or other asset for the acquisition or improvement of which the outstanding bonds were issued. It is argued that Chapter 15686 does not expressly authorize such a pledge and the case of *City of Coral Gables v. Hepkins,* 107 *Fla.* 778, 144 *So.* 295, is cited as authority denying the power to make such pledge. That case involved the issuance of execution against municipality owned property. The instant case involves a voluntary pledge by agreement. There is a vast difference between the two. There is nothing in the pledge that will compel the city to sell any of its property or assets. The property and assets are not pledged, but only the proceeds to be derived from the sale if and when the city should ever deem it advisable to make such a sale. It should also be noted that the resolution provides for such pledge only in the event that the proceeds to be derived from such sale are not required for the purchase of substituted property to be used for the same purpose. Obviously if the city should sell any of such assets, the very fact that the city deems it advisable to dispose of them establishes that they are no longer required for any of the purposes or functions of the city. The pledge of the proceeds of such sales is not at all comparable with an attempt on the part of a creditor of the city to levy execution upon municipal property or utilities devoted to a public use. The theory upon which

it has been held that such property is exempt from execution is that it is essential for the proper maintenance of municipal government. If and when the city deems it advisable to dispose of such property that determination will be a conclusive denial of the need of it for municipal purposes. There is clear statutory power for such pledge. Chapter 15686 directs that the full faith and credit of the city shall be pledged to the payment of the refunding bonds and authorize the establishment and maintenance of a sinking fund. The pledge of the proceeds to be received from such sales to the payment of the refunding bonds is merely one of the provisions agreed upon for the creation and maintenance of a sinking fund. The power to establish a sinking fund carries with it the power to prescribe the manner of creating such fund. In the absence of express limitations the city is free to resort to any means not prohibited by law.

It is further objected that the city has no power to obligate itself to levy for debt service on refunding bonds an additional tax of fifty cents for each dollar of increase in the annual tax levy for general maintenance and operating expenses over the sum of $2,750,000. The city's contention in support of this paragraph of the resolution is that, recognizing the fact that as the city grows in wealth it should increase its tax levy for debt service, provision has been made whereby the annual tax levy for the payment of the refunding bonds will increase if and when the city develops and grows. This provision serves primarily as a yardstick by which to measure the ability of the city to impose additional taxes for the retirement of this debt. As the city grows in population and wealth, the cost of government is bound to increase because of new and increasing demands that will be placed upon the government. The growth and wealth of the city being thus reflected in the cost of municipal government, the increase in that cost is deemed to be a

measure of the growth and prosperity of the community. Accordingly an increase in the tax levy for debt service in proportion to the increase in the tax levy for operating expenses presents a sound and reasonable method of accelerating the payment of the city's debt. Our conclusion is that this provision is merely another detail in the general scheme of establishing and maintaining a sinking fund for the retirement of the debt; and the power to make such a provision as this appears to be granted by Section 20 of Chapter 15772 of the Acts of 1931.

Some of the objections to the resolution of the City Commission authorizing this issue of refunding bonds raise questions which do not go to the validity of the bonds. For instance, the resolution provides that no taxes shall be imposed by the city upon these bonds. This provision is in line with the section of the City Charter of Miami, Chapter 10847, Laws of 1925, which directs that no taxes shall be imposed by the city upon its bonds or other obligations. It is claimed that this provision is in conflict with Section 1 of Article 9 of the Constitution, providing for a uniform and equal rate of taxation, and that the Legislature shall prescribe such regulations as shall secure a just valuation of all property, both real and personal. However, this same section of the Constitution excepts from its provisions such property as "may be exempted by law from municipal," and other named purposes. These bonds, of course, are issued for a municipal purpose. See Chester County v. White Bros., 50 S. E. 28; State v. Board of Assessors, 35 La. Ann. 651; In re Assessment of First National Bank, 160 Pac. 469; Penick v. Foster, 58 S. E. 773; Pullen v. Corporation Commission, 68 S. E. 155. But we are not here concerned with this question, as it is one which can only be raised in a direct proceeding relating to the taxation of the bonds. Even if this provision of the resolution is invalid, it would

not affect the validity of the bonds. Walsh v. Asher 173 S. W. 808; Lumberton Improvement Company v. Board of Commissioners, 59 S. E. 1014. So whether this provision exempting the bonds from taxation is valid or invalid, it cannot be questioned in this proceeding, and the determination of that question would not affect the validity of the bonds.

It is also claimed that the refunding of certificates of indebtedness, to cover unpaid interest, are not legally provided for, because the exact amount and denominations thereof are not definitely fixed by the resolution of the City Commission. But the resolution does provide that certificates of indebtedness may be issued in an amount equal to all unpaid interest which shall have accrued upon the outstanding bonds up to the date they are exchanged for the refunding bonds, except the three per cent. of interest which must be paid in cash. Thus, the amount will be determined by the amount of interest due on the outstanding bonds at the date of the exchange. Although no exact figure can now be arrived at as to the amount of the certificates of indebtedness to be issued, the resolution does definitely prescribe a method of computing the amount of such certificates to be issued, and the amount of outstanding bonds is definitely fixed and the interest borne by the outstanding bonds is also definitely known. After the refunding bonds are delivered, it will be a mere matter of mathematical calculation to determine the amount of certificates of indebtedness to be issued to refund part of the interest thereafter accruing upon the refunding bonds. Thus while no definite amount of refunding certificates of indebtedness is now fixed, there is fixed a definite means of arriving at that amount. "That is certain which may be rendered certain." This is sufficient for all practical purposes and also a sufficient compliance with Section 5107, Compiled General Laws of 1927. See

State v. City of Coral Gables, 154 So. 234; Getzen v. Sumter County, 89 Fla. 45, 103 So. 104.

We find no error in the record, and the order and decree appealed from are accordingly affirmed.

Davis, C. J., and Whitfield, Ellis, Terrell, and Buford, J. J., concur.