**THE STATE OF FLORIDA v. STATE BOARD OF ADMINISTRATION, a body corporate under Section 16 of Article IX of the Constitution of the State of Florida, for and on behalf of OVERSEAS ROAD AND TOLL BRIDGE DISTRICT, IN MONROE COUNTY, FLORIDA.**

25 So. (2nd) 880            January Term, 1946
April 30, 1946            En Banc

*Glenn C. Mincer,* State Attorney, *S. O. Carson,* Assistant State Attorney, for appellant.

*John T. Wiggington,* for appellee.

*Giles J. Patterson,* as amicus curiae.

TERRELL, J.:

This appeal is from a final decree validating $3,150,000.00 of refunding bonds authorized by the State Board of Administration for the purpose of refunding a like amount of original bonds of the Overseas Road and Toll Bridge district in Monroe County dated September 1, 1936. It is admitted that the refund is highly desirable and will result in a material saving to the district.

The first question with which we are confronted is whether or not the State Board of Administration is authorized to issue said refunding bonds, in view of the limitations in Sections 6 and 16, Article IX of the Constitution.

Appellant contends that this question should be answered in the negative because, (1) the refunding bonds are for a purpose defined in Section 6 of Article IX of the Constitution, limiting the purposes for which State bonds may be issued, and (2) under Section 16, Article IX of the Constitution, the State Board of Administration is authorized to refund only such bonds as were outstanding July 1, 1931. It is shown that the original bonds were issued September 1, 1936. Appellees admit the latter contention, but they counter with the contention that Section 16, Aricle IX of the Constitution authorizes the Legislature to confer additional powers on the State Board of Administration; that it has, in fact, con-

ferred such additional powers, one of which was the power to issue refunding bonds.

The State Board of Administration was created by Chapter 14486, Acts of 1929, it was amended by subsequent acts of the Legislature, and, on November 3, 1942, effective January 1, 1943, Section 16, Article IX of the Constitution made it a body corporate, clothed it with many powers, and authorized the Legislature to clothe it with others. Section 16(b), Article IX, among other things, provides:

"Said Board shall have, in addition to such powers as may be conferred upon it by law, the management, control and supervision of the proceeds of said two (2c) cents of said taxes and all moneys and other assets which on the effective date of this amendment are applicable or may become applicable to the bonds of the several counties of this State, or any special road and bridge district, or other special taxing district thereof, issued prior to July 1st, 1931 for road and bridge purposes. The word 'bonds' as used herein shall include bonds, time warrants, notes and other forms of indebtedness issued for road and bridge purposes by any county or special road and bridge district or other special taxing district, outstanding on July 1st, 1931, or any refunding issues thereof."

The Overseas Road and Toll Bridge District was created by Chapter 16598, Acts of 1933, and the original bonds were issued pursuant to said act. Chapted 20555, Acts of 1941, (Section 341.63, Florida Statutes 1941), authorized the State Road Department to enter into contract of purchase or lease with any owner of a toll bridge or causeway. Chapter 21454, Acts of 1941, authorized the Overseas Road and Toll Bridge District to lease or sell to the State Road Department any or all toll bridges or toll highways owned by it on such terms as may be agreed upon. Chapter 21853, Acts of 1942, authorized the constitutional State Board of Administration to take over the management, custody, and payment of the debt service funds available for the payment of all bonds issued to finance the construction or purchase of bridges or highways, which were then or might thereafter be leased for more than one year or purchase by the State Road Department. The State

Board of Administration was further authorized to issue refunding bonds and to undertake all powers with reference thereto.

Pursuant to Chapter 20555, Acts of 1941, and Chapter 21454, Special Acts of 1941, the State Road Department entered into contract with the Overseas Road and Toll Bridge District, for the purchase of "all the toll bridges and toll highways" and other property of the overseas Road and Toll Bridge District. As consideration for said purchase, the State Road Department agreed to pay all amounts received for tolls from said toll bridges and toll highways and, in addition thereto, all funds from the eighty per cent gasoline surplus available to Monroe County, pursuant to Section 16(c), Article IX of the Constitution.

The refunding bonds brought in question were issued by resolution of the State Board of Administration, adopted February 26, 1946, pursuant to Chapter 21853, Acts of 1943. The Chancellor validated them, on the theory that the purchase agreement entered into between the State Road Department and the Overseas Road and Toll Bridge District, as authorized by Chapter 20555 and Chapter 21454, Acts of 1941, was a valid exercise of Legislative power. So the first question to dispose of is whether or not Chapter 21853, Acts of 1943, is violative of Section 16, Article IX of the Constitution.

This question turns on the interpretation of Chapter 21853, as read in connection with the provisions of Section 16, Article IX of the Constitution. The original bonds were issued September 1, 1936, and provide for their payment solely from the tolls and other revenues of any nature whatsoever received from the operation of the toll bridges and toll highways and any other property of the district. None of them is in default; in fact, interest and maturities have been paid, and a surplus has been built up from these sources. The pledge to secure payment of the refunding bonds includes the same sources, in addition to the eighty per cent surplus gasoline taxes accruing to Monroe County under Section 16, Article IX of the Constitution. The surplus gasoline taxes might be classed as other property of the district; at any

rate, Section 16, Article IX of the Constitution vested in the State Road Repartment an unlimited discretion to use it for the best interest of the county. The lease-purchase agreement provided that it might be so used, no advalorem tax burden can or will be imposed on the taxable property of the district, and the obligation of the tax payers will in no way be affected.

The surplus gasoline taxes accruing to Monroe County were not in terms pledged for payment of the original bonds, but the State Road Department is authorized to use them to lease or purchase any toll bridge or toll highway. When this is done, the payment of said revenues for the purchases of toll roads and toll bridges amount to an additional revenue earned by the district. It follows that, when the pertinent provisions of the Constitution and the statute are read in their entirety, the income of the district consists of the bridge and toll rentals and the eighty per cent surplus gasoline taxes. So, in reality, there is no difference between the pledge to service the original and the refunding bonds. Chapter 20555, Acts of 1941, authorizing the State Road Department to lease or purchase the roads and bridges, is in harmony with the constitutional amendment and appears to have been strictly complied with, so there was no occasion for an approving vote of the freeholders, as required by Section 6, Article IX of the Constitution. They could have been issued in the first place and could have been refunded without such an election, and there is no theory under which they could have been called state bonds. State v. Escambia County, 153 Fla. 282, 14 So. (2) 576; State v. City of Miami, 116 Fla. 517, 157 So. 13; State v. Citrus County, 116 Fla. 676, 157 So. 4.

Likewise, we find no support for the contention that Chapter 21853, Acts of 1943, violates Section 16, Article IX of the Constitution. Unquestionably, the act seeks to enlarge the powers of the State Board of Administration, but the powers specified are similar to those enumerated in the Constitution, and they are well within the grant of powers which the Legislature is authorized to confer on the State Board of Administration. The constitutional amendment clearly contemplates that the Legislature confer such additional powers on

the Board. There was no shifting of sources of responsibility for payment of the obligation; only the agency to pay was changed, and the Legislature was authorized to do this.

If the original or the refunding bonds were to be paid from the funds allocated to the State Board of Administration by Section 16, Article IX of the Constitution, there would be substance to the contention that it is devoid of authority to pay them because they were not issued prior to July 1, 1931, but this is not the case. To issue and service the refunding bonds, The State Board of Administration relies exclusively on Chapter 21853, Acts of 1943, as to which there is no set date prior to or subsequent to which the bonds must have been issued to permit their liquidation. The Legislature, in other words, by means of the surplus gas tax, made possible a new field of activity for the State Board of Administration.

It also appears that no part of the gas tax funds allocated to Monroe County, under Section 16 of Article IX of the Constitution, is expected to be used by the State Board of Administration to service the refunding bonds. It is asserted that Monroe County's portion, after debt service requirements have been met, will be remitted to the State Road Department. When this is done, these funds become county funds, subject to expenditure by the State Road Department, as provided by Section 16(c), Article IX of the Constitution. The State Road Department has declared its purpose to use these funds to carry out its contract with the district. Under Chapter 21853, these funds will be paid to the State Board of Administration for credit to its sinking fund account for debt service requirements. The date of the issuance of the original bonds is, therefore, immaterial.

Under Section 16, Article IX of the Constitution, the State Board of Administration was clothed with all the powers of the statutory board, together with those of county commissioners and bond trustees, insofar as the administration of bonds and bond funds is concerned. The very purpose of Chapter 21853 was to expand and make these powers more effective. In the case at bar, it is shown that the original bonds bear interest at the rate of four per cent, while the rate on the refunding bonds is 1.545 per cent. It is also shown

that the original bonds are retired in 1968, while the refunding bonds are retired in twelve years. The result is the saving of more than one million dollars in interest, a material reduction in maturities, and the acquirement by the county of an estimated value in roads and bridges of more than forty million dollars. For this, the State Road Department pledges one-half million dollars of Monroe County's surplus gasoline taxes in the form of rental for which it has no other use.

If the question was a close one, this fact alone would be a very persuasive factor to uphold the validating decree, there being no question of individual or minority rights involved or no charge that constitutional guaranties have been infringed. The major question is one that concerns the general welfare, and, when that is the case, constitutional questions should be approached from the pragmatic rather than the legalistic point of view. Courts can do this and not transgress the bounds of constitutional framework. The Constitution is what the people intended it to be; its dominant note is the general welfare; it was not intended to bind like a straitjacket but contemplated experimentation for the common good. When it was promulgated, its sponsors thought it the embodiment of the common concept of right and a practical means of insuring justice. Interpreted with these precepts to guide us, we arrive at correct judgments that can be enforced with the minimum of coercion. Not only that, we dispel the charge that the Constitutional interpretation is an expression of judicial prejudices or of the judges' social and economic theories. The question here involves new complexes that must be thought through in the light of the purpose designed to be accomplished and not in the light of outworn dogmas that do nothing more than throw our means of administering justice into a stalemate. Reasoning in this way, we find no constitutional objection to the act assaulted.

It is last contended that the authorizing resolution providing for the issuance of the refunding bonds was invalid, in that it was not adopted as required by Section 344.01 et seq., Florida Statutes 1941.

It is quite true that Section 344.12, Florida Statutes 1941, provides that the State Board of Administration "shall con-

sist of the Governor who shall be President, the State Comptroller who shall be Secretary, and the State Treasurer who shall be Treasurer." It is also true that the resolution authorizing the refunding bonds is certified by J. Edwin Larson, Treasurer of the State of Florida, as Secretary of the State Board of Administration.

We do not think, however, that there is any merit to the contention, because Section 16 of Article IX of the Constitution creates the State Board of Administration as a body corporate and provides that the Governor shall be chairman and that the State Treasurer and Comptroller shall be members of the Board. It also provides that the State Board of Administration may adopt rules and regulations for the conduct of its business. It was, therefore, within the power of the Board to organize and designate whom it would as its secretary.

We are, therefore, driven to the conclusion that the refunding bonds were issued in compliance with the law and that they are free from constitutional inhibitions, so the validating decree is affirmed.

Affirmed.

CHAPMAN, C. J., BUFORD, THOMAS and ADAMS, JJ., concur.

BROWN, J., dissents.

SEBRING, J., not participating.