767 So.2d 668 (2000)
John Ellis "Jeb" BUSH, in his official capacity as Governor of the State of Florida and Chairman of the State Board of Education; Attorney General Robert A. Butterworth, Secretary of Education Tom Gallagher, Secretary of State Katherine Harris, Comptroller Robert Milligan, Commissioner of Insurance and State Treasurer Bill Nelson, Commissioner of Agriculture Bob Crawford, in their official capacities and as members of the State Board of Education; and Florida Department of Education, Appellants,
v.
Ruth D. HOLMES; Gregory and Susan Watson on behalf of themselves and their minor children Sarah, Seth, and Sybil Watson; Rebecca Hale, on behalf of herself and her minor child, Jessica Dennis; John Rigsby, on behalf of himself and his minor children, Thaddeus and Porsche Rigsby; Queen E. Nelson, on behalf of herself and her minor grandchild, Ashley Wilson; Samuel Watts on behalf of himself and his minor children, Rondale, Reynard, and Rebecca Watts; Linda Lerner; Betsy H. Kaplan; Florida State Conference of Branches of NAACP; Citizens' Coalition for Public Schools; The Florida Congress of Parents and Teachers (a/k/a "Florida PTA"); Florida Education Association/United, AFT AFL-CIO, a labor organization and Florida taxpayer; and Pat Tornillo, Jr., Andy Ford, Rita Moody, Mary Lopez, and Robert F. Lee, as Florida taxpayers, Appellees.
Brenda McShane, in her own behalf as natural guardian of her child, Brenisha McShane; Dermita Merkman, in her own behalf and as natural guardian of her child, Jessica Merkman; Tracy Richardson, in her own behalf and as natural guardian of her child, Khaliah Clanton; Sharon Mallety, in her own behalf and as natural guardian of her child, Jermall Bell; Barbara Landrum, in her own behalf and as natural guardian of her children, Laquila and Stacy Marie Wheeler; and Urban League Of Greater Miami, Inc., Appellants,
v.
Ruth D. Holmes; Gregory And Susan Watson on behalf of themselves and their minor children Sarah, Seth, and Sybil Watson; Rebecca Hale, on behalf of herself and her minor child, Jessica Dennis; John Rigsby, on behalf of himself and his minor children, Thaddeus and Porsche Rigsby; Queen E. Nelson, on behalf of herself and her minor grandchild, Ashley Wilson; Samuel Watts on behalf of himself and his minor children, Rondale, Reynard, and Rebecca Watts; Linda Lerner; Betsy H. Kaplan; Florida State Conference of Branches of NAACP; Citizens' Coalition for Public Schools; Florida Congress of Parents and Teachers (a/k/a "Florida PTA"); Florida Education Association/United, AFT AFL-CIO, a labor organization and Florida taxpayer; and Pat Tornillo, Jr., Andy Ford, Rita Moody, Mary Lopez, and Robert F. Lee, as Florida taxpayers, Appellees.
Nos. 1D00-1121 and 1D00-1150.
District Court of Appeal of Florida, First District.
October 3, 2000.
*670 Frank R. Jimenez, Acting General Counsel, and Reginald J. Brown, Deputy General Counsel, Tallahassee; Charles T. Canady, Washington, D.C.; Carol A. Licko, Thomson, Muraro, Razook & Hart, P.A., Miami; and Jay P. Lefkowitz and Brett M. Kavanaugh of Kirkland & Ellis, Washington, D.C., for Appellants John Ellis "Jeb" Bush, et al.
Thomas E. Warner, Solicitor General of Florida, Louis F. Hubener, Assistant Attorney General, James A. Peters, Special Counsel, and Richard A. Hixson, Deputy Solicitor General, Tallahassee, for Robert A. Butterworth, Attorney General of Florida.
Harry L. Hooper, General Counsel, Comptroller's Office, Tallahassee, for Robert Milligan, Florida Comptroller.
Michael Olenick, General Counsel, Tallahassee, for Florida Department of Education.
Kenneth W. Sukhia of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tallahassee; and Clint Bolick and Matthew Berry, Institute for Justice, Washington, D.C., for Appellants Brenda McShane, et al.
Frank A. Shepherd of Pacific Legal Foundation, Miami, for Amici Curiae Independent Voices for Better Education, Teachers for Better Education, Ira J. Paul, Robert N. Wright, and Pacific Legal Foundation; and Paul D. Clement, Jeffrey M. Telep, and Jeffrey S. Bucholtz of King & Spalding, Washington, D.C., for Amici Curiae The Center for Education Reform, American Education Reform Foundation, American Legislative Exchange Council, Children First CEO America, Education Leaders Council, Floridians for School Choice, "I Have a Dream" Foundation of Washington, D.C., and Mayor Bret Schundler, Republican Mayor of Jersey City, New Jersey, and founder of Empower the People on behalf of Appellants Brenda McShane, et al.
Ronald G. Meyer of Meyer and Brooks, P.A., Tallahassee; Robert H. Chanin, John M. West, and Alice O'Brien of Bredhoff & Kaiser, P.L.L.C., Washington, D.C.; Andrew H. Kayton, American Civil Liberties Union Foundation of Florida, Inc., Miami; Michael A. Sussman of National Association for Advancement of Colored People, New York; Julie Underwood, General Counsel of National School Boards Association, Virginia; Elliot M. Mincberg and Judith E. Schaeffer, of People for the American Way Foundation, Washington, D.C.; Marc D. Stern of American Jewish Congress, New York; Steven K. Green and Ayesha N. Khan, Americans United for Separation of Church and State, Washington, D.C.; Steven R. Shapiro of American Civil Liberties Union Foundation, New York; Jeffrey P. Sinensky and Kara H. Stein of the American Jewish Committee, New York; Joan Peppard, Anti-Defamation League, Miami; and Elizabeth J. Coleman and Steven M. Freeman of Anti-Defamation League, New York, for Appellees Ruth D. Holmes, et al.
W. Dexter Douglass and Thomas P. Crapps of Douglass Law Firm, Tallahassee; Marvin E. Frankel and Justine A. Harris of Kramer Levin Naftalis & Frankel LLP, New York; David Strom of the American Federation of Teachers, Washington, D.C.; Pamela L. Cooper, General Counsel, Florida Teaching Profession-NEA, Tallahassee, for Appellees Florida Education Association/United, AFT AFLCIO, et al.
KAHN, J.
This is a consolidated appeal from a final judgment declaring section 229.0537, Florida Statutes (1999), "insofar as it establishes a program through which the State pays for certain students to attend private schools," facially unconstitutional under article IX, section 1 of the Florida Constitution.[1] Section 229.0537 contains the provisions *671 of Florida's Opportunity Scholarship Program (OSP) and is part of a larger comprehensive legislative program addressing Florida's public schools. See Ch. 99-398, Laws of Fla. For the reasons explained below, we reverse and remand this case for further proceedings. In so doing, we emphasize that our holding addresses only the narrow issue of the facial constitutionality of the OSP under article IX, section 1 of the Florida Constitution.

I. BACKGROUND
Section 229.0537 became law on June 21, 1999. See Ch. 99-398, § 78, at 4368, Laws of Fla. The next day, the appellees in this consolidated appeal, a group of parents, Florida citizens, and interest groups, filed a complaint alleging that section 229.0537 violated certain constitutional provisions: (1) article I, section 3 of the Florida Constitution[2]; (2) article IX, section 1 of the Florida Constitution; (3) article IX, section 6 of the Florida Constitution[3]; and (4) the Establishment Clause of the First Amendment to the U.S. Constitution. On July 29, 1999, the Florida Education Association and others (FEA), filed a complaint challenging the constitutionality of section 229.0537 on the same four grounds raised by the appellees.[4] The complaints named as defendants Governor John Ellis "Jeb" Bush and cabinet members, in their official capacities and as members of the State Board of Education, in addition to the Florida Department of Education ("State defendants").
The FEA filed a motion to consolidate the two cases and the trial court granted this motion. A group of parents and guardians of students receiving opportunity scholarships ("the parents"), moved to intervene in both cases, and the trial court also granted these motions. The parents thereafter moved to dismiss the article IX, section 1 claims for lack of standing, justiciability, and failure to state a claim. Following a hearing, the trial court denied these motions.
The trial court held a case management conference on December 2, 1999. The court explained that the purpose of the conference was for the parties to identify "the issues that would require the presentation of evidence to resolve those issues and those issues that dealt with the challenge of the constitutionality of the statute on its face." After hearing arguments from the parties, the court deferred consideration of whether the statute was unconstitutional under the religion clauses in the Florida and U.S. constitutions. The court did decide, however, that it could consider the argument that section 229.0537 violated article IX, section 1 on its face because, in the trial court's view, this challenge did not require an evidentiary basis. Accordingly, on December 8, 1999, the trial court entered an order setting *672 a final hearing for February 24, 2000, and directing the parties to file briefs on "the issue of the facial constitutionality of the Opportunity Scholarship Program, Fla. Stat., Section 229.0537, under Article IX, Section 1 of the Florida Constitution...."
On December 30, 1999, the plaintiffs filed separate briefs and attachments. On January 28, 2000, the State defendants filed Objections to Final Hearing Procedure or, in the Alternative, Motion to Strike Plaintiffs' Briefs. The State defendants argued for the first time that the trial court's summary resolution of the facial constitutionality of the statute "is on the brink of an abyss." The State defendants also argued that the plaintiffs "present myriad factual arguments masked as legal arguments."
On February 4, 2000, the plaintiffs filed responses challenging the timeliness of the defendants' objections, and on February 7, 2000, the trial court conducted a hearing on the objections. The court stated that "[t]his is the final hearing on the facial constitutionality of this statute" and ruled that it was "exercising its inherent power to limit the issues that are going to be tried, and these issues are going to be strictly matters of law." The trial court denied the State's motion to strike the initial briefs and confirmed the final hearing date of February 24, 2000. On February 17, the court rendered an order in accordance with these rulings and denying defendants' objections to the final hearing procedure.
On February 24, the court heard oral argument from the parties and amici curiae. On March 14, 2000, the trial court entered a final judgment holding that "[s]ection 229.0537, Fla. Stat., insofar as it establishes a program through which the State pays tuition for certain students to attend private schools, is declared to be unconstitutional on its face under Article IX, § 1 of the Florida Constitution."
The State defendants filed a timely notice of appeal, assigned case number 1D00-1121 in this court. The parents filed a separate notice of appeal, assigned case number 1D00-1150. This court granted appellees' motion to consolidate the cases.
Appellants raise essentially two points in this consolidated appeal. First, appellants assert that the trial court denied them due process and a fair trial by ignoring the Florida Rules of Civil Procedure and entering final judgment without trial or evidence, upon disputed facts, and without a motion for summary judgment or judgment on the pleadings. Second, appellants assert that the trial court erred in holding the OSP facially unconstitutional under article IX, section 1 of the Florida Constitution.

II. WHETHER THE PROCEDURE EMPLOYED BY THE TRIAL COURT WARRANTS REVERSAL
Regarding the first point, the trial court did err in the procedure it employed because nothing in the Florida Rules of Civil Procedure authorizes this procedure. We find this constituted harmless error, however, because the parties had adequate notice, time to respond, and an opportunity to be heard, and appellants have not demonstrated any prejudice much less "a miscarriage of justice." See § 59.041, Fla. Stat. (1999) ("No judgment shall be set aside or reversed ... for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice."). The cases relied upon by appellants involve situations where a trial court failed to set a matter for trial pursuant to Rule 1.440. See Orange Lake Country Club, Inc. v. Levin, 645 So.2d 60, 62 (Fla. 5th DCA 1994) (finding trial court erred in entering judgment where, among other things, trial court failed to set matter for trial pursuant to Rule 1.440); Ramos v. Menks, 509 So.2d 1123, 1124 (Fla. 1st DCA 1986) (reversing final judgment and remanding for further proceedings where trial court failed to follow *673 Rule 1.440); Bennett v. Continental Chems. Inc., 492 So.2d 724, 727 (Fla. 1st DCA 1986) (en banc) (holding that "strict compliance with rule 1.440 is mandatory"). That is not the situation here. Moreover, appellants appear to have acquiesced in the procedure adopted by the trial court, objecting only to the plaintiffs' fact-intensive assertions. See Bennett v. Ward, 667 So.2d 378, 380 (Fla. 1st DCA 1995) (explaining that appellant "may have waived objection not only to notice of trial but, more fundamentally, to the apparent omission altogether of any bench trial or evidentiary hearing" where, although no motion for summary judgment was ever filed, trial court held hearing and entered final judgment of foreclosure); Frank v. Pioneer Metals, Inc., 121 So.2d 685, 688 (Fla. 3d DCA 1960) (rejecting appellant's argument that the trial court erred by transferring the case to the equity side of the court: "[W]e are constrained to point out that by the appellant's failure to timely object to that procedure which she now contends to be irregular, she will be deemed to have waived the objection by acquiescence. Procedural matters not objected to in the trial court cannot be raised upon appeal."). We thus conclude that the procedure employed by the trial court, although erroneous, does not warrant reversal.

III. WHETHER THE OSP IS FACIALLY UNCONSTITUTIONAL UNDER ARTICLE IX, SECTION I OF THE FLORIDA CONSTITUTION
As a substantive matter, appellants argue that the trial court erred in finding the OSP facially unconstitutional under article IX, section 1. In particular, appellants assert that the trial court should not have relied on the principle of expressio unius est exclusio alterius in finding that the Florida Constitution does not permit the Legislature to enact the OSP. We agree with appellants and, for the reasons set forth below, we reverse on this point and remand this case for further proceedings.

A.
In striking the OSP as facially unconstitutional, the trial court stated:
By providing state funds for some students to obtain a K-12 education through private schools, as an alternative to the high quality education available through the system of free public schools, the legislature has violated the mandate of the Florida Constitution, adopted by the electorate of this state. Tax dollars may not be used to send the children of this state to private schools as provided by the Opportunity Scholarship Program.
Recognizing that nothing in the constitution directly limits the authority of the Legislature to establish the OSP, the trial court nonetheless concluded, "[T]he negative implication is evident."
The Florida Constitution is a limitation upon, rather than a grant of, power. See Board of Public Instruction for County of Sumter v. Wright, 76 So.2d 863, 864 (Fla.1955) ("This court has consistently adhered to the fundamental principle that our state constitution is a limitation upon, rather than a grant of, power."); Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, 881 (1944) ("`Our state constitution is a limitation upon power, and, unless legislation duly passed be clearly contrary to some express or implied prohibition contained therein, the courts have no authority to pronounce it invalid.'") (quoting Chapman v. Reddick, 41 Fla. 120, 25 So. 673, 677 (1899)). Although implied constitutional prohibitions are recognized, a reviewing court must not be overly anxious to strike an enactment that merely is not specifically provided for in the organic document. Indeed, "[w]hen a legislative enactment is challenged the court should be liberal in its interpretation; every doubt should be resolved in favor of the constitutionality of the law, and the law should not be held invalid unless clearly unconstitutional beyond a reasonable doubt." Taylor, 19 So.2d at 882. Recognizing these principles, appellants argue that the trial court *674 erred in relying on another maxim, expressio unius est exclusio alterius, in finding section 229.0537 facially unconstitutional.
This argument has merit. The principle of expressio unius est exclusio alterius is "[a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary 602 (7th ed.1999). This principle should be used sparingly with respect to the constitution. See Taylor, 19 So.2d at 881 (explaining that the expressio unius maxim "should be sparingly used in construing the constitution"). As appellants explain, and appellees acknowledge, the trial court did not find that article IX, section 1, by its terms, expressly prohibits state-funded scholarships for children to attend a private school; instead, the trial court found an implied prohibition. Specifically, the trial court found that "[b]ecause Article IX, section 1 directs that public education, K-12, be accomplished through a `system of free public schools,' that is, in effect, a prohibition on the Legislature to provide a K-12 public education in any other way." Despite the fact that the constitution does not, by its terms, expressly direct that the State may only fulfill its obligation to provide education "through" the public school system, the trial court arrived at the "evident" negative implication.
In applying the expressio unius principle to this case, the trial court quoted a portion of the Florida Supreme Court's opinion in Weinberger v. Board of Public Instruction of St. Johns County:
The principle is well established that, where the Constitution expressly provides the manner of doing a thing, it impliedly forbids its being done in a substantially different manner. Even though the Constitution does not in terms prohibit the doing of a thing in another manner, the fact that it has prescribed the manner in which the thing shall be done is itself a prohibition against a different manner of doing it. Therefore, when the Constitution prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of the Legislature to enact a statute that would defeat the purpose of the constitutional provision.
93 Fla. 470, 112 So. 253, 256 (1927) (citations omitted). In Weinberger and the other cases relied upon by the trial court, however, the expressio unius principle found its way into the analysis only because the constitution forbade any action other than that specified in the constitution, and the action taken by the Legislature defeated the purpose of the constitutional provision. See id. at 254-56 (finding bonds proposed to be issued by Board of Public Instruction void ab initio because their maturity dates did not conform to article 12, section 17 of the Florida Constitution, which specified that "[a]ny bonds issued hereunder shall become payable within thirty years from the date of issuance in annual installments which shall commence not more than three years after the date of issue"); State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 So. 433, 433-34 (1888) (finding that statute providing for compensation of county solicitors by the State violated Florida Constitution provision that "[t]he compensation of all county school officers shall be paid from the school fund of their respective counties, and all other county officers receiving stated salaries shall be paid from the general funds of their respective counties" and explaining that "[w]hen a constitution directs how a thing shall be done, that is in effect a prohibition to its being done in any other way"). See also Sullivan v. Askew, 348 So.2d 312, 315-16 (Fla.1977) (quoting In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520, 522-23 (Fla.1975) (quoting Weinberger), and holding that Governor had sole, unrestricted, and unlimited discretion to exercise pardon power and procedures adopted by Governor for exercise of that exclusive power were consistent with constitutional grant of authority); In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520, 522-23 *675 (Fla.1975) (quoting Weinberger and advising that provisions for suspension and automatic reinstatement of civil rights contained in Correctional Reform Act of 1974 infringed on Governor's constitutional duties and responsibilities relating to executive clemency); In re Investigation of a Circuit Judge, 93 So.2d 601, 606-08 (Fla. 1957) (citing Weinberger and finding that where constitution creates office, fixes its term, and provides under what conditions officer may be removed before expiration of term, neither Legislature nor any other authority has power to remove or suspend such officer in any manner other than that provided in constitution); State ex rel. Ellars v. Board of County Comm'rs of Orange County, 147 Fla. 278, 3 So.2d 360, 362-63 (1941) (quoting Weinberger and finding statute, which fixed compensation of county solicitors of criminal courts of record in counties having population between 70,000 and 100,000, was valid general law applicable to office of county solicitor of criminal court of Orange County and was not subject to constitutional prohibition against enactment of special or local laws regulating fees of county officers); State ex rel. Church v. Yeats, 74 Fla. 509, 77 So. 262, 264 (1917) ("Article 19 leaves the determination of its enforcement to the registered voters of the counties and election districts, irrespective of race or color, to be determined by a majority of the aggregate; the statute requires two majorities, one of the white and the other the colored registered voters, and in this it clearly defeats the purpose of the Constitution in local option article, which this court has said was to remit to the registered voters of each county the settlement of the issue whether the sale of intoxicating wines or beer should be prohibited within the county.").
In contrast, in this case, nothing in article IX, section 1 clearly prohibits the Legislature from allowing the well-delineated use[5] of public funds for private school education, particularly in circumstances where the Legislature finds such use is necessary. We therefore reject the trial court's finding that the constitution not only mandates that the State "make adequate provision for the education of all children" in Florida, but that it also prescribes the sole means for implementation of that mandate. Contrary to the conclusion of the trial court, and the argument advanced by appellees, article IX, section 1 does not unalterably hitch the requirement to make adequate provision for education to a single, specified engine, that being the public school system.
In passing section 229.0537, the Legislature made specific findings indicating it sought to advance, not defeat, the purpose of article IX, section 1:
The purpose of this section is to provide enhanced opportunity for students in this state to gain the knowledge and skills necessary for postsecondary education, a technical education, or the world of work. The Legislature recognizes that the voters of the State of Florida, in the November 1998 general election, amended s. 1, Art. IX of the Florida Constitution so as to make education a paramount duty of the state. The Legislature finds that the State Constitution requires the state to provide the opportunity to obtain a high-quality education. The Legislature further finds that a student should not be compelled, against the wishes of the student's parent or guardian, to remain in a school found by the state to be failing for 2 years in a 4-year period. The Legislature shall make available opportunity *676 scholarships in order to give parents and guardians the opportunity for their children to attend a public school that is performing satisfactorily or to attend an eligible private school when the parent or guardian chooses to apply the equivalent of the public education funds generated by his or her child to the cost of tuition in the eligible private school as provided in paragraph (6)(a). Eligibility of a private school shall include the control and accountability requirements that, coupled with the exercise of parental choice, are reasonably necessary to secure the educational public purpose, as delineated in subsection (4).
§ 229.0537(1), Fla. Stat. (1999) (emphasis added). Although, in establishing the OSP, the Legislature recognized that some public schools may not perform at an acceptable level, the Legislature attempted to improve those schools by raising expectations for and creating competition among schools, while at the same time not penalizing the students attending failing schools. See Ch. 99-398, at 4273, Laws of Fla. ("WHEREAS, children will have the best opportunity to obtain a high-quality education in the public education system of this state and that system can best be enhanced when positive parental influences are present, when we allocate resources efficiently and concentrate resources to enhance a safe, secure, and disciplined classroom learning environment, when we support teachers, when we reinforce shared high academic expectations, and when we promptly reward success and promptly identify failure, as well as promptly appraise the public of both successes and failures ..."). We must be mindful that "[t]he Constitution is what the people intended it to be; its dominant note is the general welfare; it was not intended to bind like a strait-jacket but contemplated experimentation for the common good." State v. State Bd. of Admin., 157 Fla. 360, 25 So.2d 880, 884 (1946).

B.
We note that the Legislature has, in the past, established a program providing public funds for certain students to attend private schools. See Scavella v. School Bd. of Dade County, 363 So.2d 1095 (Fla. 1978). In Scavella the Florida Supreme Court indicated that "the state is responsible for providing adequate educational opportunities for all children" and "all Florida residents have the right to attend this public school system for free." Id. at 1098. The court explained that "[r]ealizing that the public schools may not have the special facilities or instructional personnel to provide an adequate educational opportunity for the exceptional students, the legislature has allowed the school boards to make contractual arrangements with private schools." Id.; see § 230.23(4)(m)2., Fla. Stat. (1977).
Scavella involved a challenge to a statute that allowed school boards to cap the amount of money paid to a private school in these contractual arrangements. See Scavella, 363 So.2d at 1098; § 230.23(4)(m)7., Fla. Stat. (1977). The supreme court interpreted this statute to mean that school boards could not impose a cap that would deprive "any student of a right to a free education" and found the statute, as interpreted, constitutional. See Scavella, 363 So.2d at 1099. As pointed out by appellees and the trial court, however, Scavella did not involve a challenge under article IX, section 1.
Nevertheless, in Scavella, the supreme court upheld a legislative program authorizing the payment of private school tuition for students whose needs could not be met in the public schools and specified that, in implementing this program, students could not be deprived of "a right to a free education." By analogy, the OSP statute does not deprive students of "a right to a free education" and requires participating private schools to "[a]ccept as full tuition and fees the amount provided by the state for each student." § 229.0537(4)(i), Fla. Stat. (1999).

*677 C.
Based on the foregoing, we hold that the trial court erred in finding the OSP facially unconstitutional under article IX, section 1. Nothing in that constitutional provision prohibits the action taken by the Legislature. The trial court erred by employing the exclusio unius principle to find an implied prohibition.

IV. OTHER CONSTITUTIONAL ISSUES
Appellees have asserted that, even if the trial court erred in its application of article IX, section 1, the order on appeal should be affirmed on alternative constitutional grounds. Specifically, appellees assert that the OSP violates (1) article IX, section 6 of the Florida Constitution; (2) article I, section 3 of the Florida Constitution; and (3) the Establishment Clause of the United States Constitution.
Following the case management conference, the trial court determined that only the facial constitutionality of the OSP under article IX, section 1, could be decided without the presentation of evidence. In the court's view, the remaining issues appeared to constitute mixed questions of fact and law. This court has explained that such issues are inappropriate for initial determination on appeal:
The rule followed by the Florida courts, as we interpret prior decisions, is that the question of the constitutionality of a statute is an issue of law, or of mixed fact and law, depending upon the nature of the statute brought into question and the scope of its threatened operation as against the party attacking the statute. While there are circumstances in which trial courts are permitted to adjudicate the merits of constitutional issues in ruling on a motion to dismiss, ... the circumstances of the particular case determine whether this is appropriate. The preferable rule, properly applied here, appears to be that if the complaint's well-pleaded allegations entitle the plaintiff to a declaration of rights, the motion to dismiss should be denied and the plaintiff allowed to adduce evidence in behalf of his pleading.
The wisdom of this rule is particularly evident in this case where we have been asked to rule for the first time on constitutional questions of considerable magnitude, without the benefit of any record except the various complaints and motions directed to the complaints, including appellees' motion to dismiss, the granting of which sparked this appeal. It is a familiar canon of appellate review that appellate courts are loath to rule upon issues not directly ruled upon by the trial court. Courts prefer that the constitutionality of a statute be considered first by a trial court. This rule is relaxed if the constitutional issues are fully briefed and relate to matters of law exclusively, ... and the full record is before the court.
Glendale Fed. Sav. & Loan Ass'n v. State, Dep't of Ins., 485 So.2d 1321, 1324-25 (Fla. 1st DCA 1986) (citations and footnote omitted). Accordingly, we decline to consider the alternative constitutional arguments asserted by appellees.

V. CONCLUSION
In sum, although we find the trial court erred regarding the procedure it employed in considering the facial constitutionality of the OSP under article IX, section 1, we find that error harmless in this case. We further find, however, that the trial court erred in holding the OSP facially unconstitutional under this provision. The trial court must now consider the remaining allegations raised by appellees, as to which we express no opinion.
REVERSED and REMANDED for further proceedings.
WEBSTER and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] Article IX, section 1 provides:

Public education.The education of children is a fundamental value of the people of the State of Florida. It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing within its borders. Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education and for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require.
[2] Article 1, section 3 provides:

Religious freedom.There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety. No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
[3] Article IX, section 6 provides:

State school fund.The income derived from the state school fund shall, and the principal of the fund may, be appropriated, but only to the support and maintenance of free public schools.
[4] The record on appeal does not contain the complaint(s) filed by the FEA.
[5] See § 229.0537(2)(a), Fla. Stat. (1999) (explaining that to receive an opportunity scholarship to attend a participating private school, a student must have "spent the prior school year in attendance at a public school that has been designated pursuant to s. 229.57 as performance grade category `F,' failing to make adequate progress, and that has had two school years in a 4-year period of such low performance, and the student's attendance occurred during a school year in which such designation was in effect" or the student has been assigned to such a school for the next school year).